IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWERTECH TECHNOLOGY, INC., | No. C 11-6121 CW |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION |
| v. | TO DISMISS AND TO STRIKE |
| TESSERA, INC., | (Docket No. 20) |
| Defendant. | |

_____/

Defendant Tessera, Inc. moves to dismiss and to strike the claims brought against it by Plaintiff Powertech Technology, Inc. (PTI). PTI opposes the motion. Having considered the papers filed by the parties and their oral arguments at the hearing, the Court DENIES Tessera's motion.

BACKGROUND

On October 20, 2003, PTI and Tessera entered into a contract called Tessera Compliant Chip License Agreement (TCC License). Compl., Appendix A (TCC License). The TCC License allows PTI to use Tessera's patents to make integrated circuit packages and to use or sell these products world-wide. Compl. ¶ 1; TCC License ¶ II.A. In return, PTI is obliged to make certain royalty payments to Tessera. See TCC License § III.

The TCC License states in part,

License Grant. Subject to . . . Licensee's payment of the fees and royalties stated herein . . ., Tessera hereby grants Licensee a world-wide, non-exclusive, non-transferable, non-sublicensable, limited license to the Tessera Patents to assemble ICs into TCC Licensed Products and use or sell such TCC License Products.

. . .

United States District Court
For the Northern District of California

Termination for Breach.  Either party may terminate this Agreement due to the other party's breach of this Agreement, such as failure to perform its duties, obligations, or other responsibilities herein . . .  The parties agree that such breach will cause substantial damages to the party not in breach.  Therefore, the parties agree to work together to mitigate the effect of any such breach; however, the non-breaching party may terminate this Agreement if such breach is not cured or sufficiently mitigated (to the non-breaching party's satisfaction) within sixty (60) days of notice thereof.

. . .

Governing Law. . . .  Both parties shall use reasonable efforts to resolve by mutual agreement any disputes, controversies, claims or differences which may arise from, under, out of or in connection with this Agreement.  If such disputes, controversies, claims or differences cannot be settled between the parties, any dispute resolution proceedings shall take place in the United States, but if either party files a claim in state or federal court, such claim shall be filed in the state or federal courts of California.  Nothing herein shall alter or affect any other rights either party may have to redress any breach or act of the other party.  Notwithstanding any provision herein, after the sixty (60) day cure period set forth in Paragraph VIII.B and notice of termination of this Agreement by one of the parties, either party may bring an action in the U.S. International Trade Commission.

No waiver.  Any waiver, express or implied, by either of the parties hereto of any right hereunder or default by the other party, shall not constitute or be deemed a continuing waiver or a waiver of any other right or default.  No failure or delay on the part of either party in the exercise of any right or privilege hereunder shall operate as waiver thereof, nor shall any single or partial exercise of such right or privilege preclude other or further exercise thereof or of any other right or privilege. . . .

TCC License ¶¶ II.A, VIII.B, XIV.A, XIV.B.

PTI has performed its obligations under the TCC License, including paying its ongoing royalties to Tessera.  Compl. ¶ 22.

In December 2007, Tessera initiated ITC Investigation No. 337-TA-630 (the 630 Investigation), accusing certain companies of infringing certain Tessera patents, including its 5,663,106 patent ('106 patent), through the importation and sale of particular wBGA

United States District Court
For the Northern District of California

and uBGA products.  Compl. ¶ 5.  Tessera also simultaneously filed a civil action in the Eastern District of Texas, in which it asserted the same patents against the same defendants for the same products as in the ITC action.  Complaint, <u>Tessera, Inc. v. A-DATA Tech. Co.</u>, No. 07-534 (E.D. Tex. Dec. 7, 2007), Docket No. 1.[1]

PTI was not named as a respondent in the ITC action or defendant in the Texas action, but Powerchip Semiconductor Corp. (PSC), ProMos Technologies Corp., and Elpida Memory Inc. were.  In related litigation, PTI has since asserted that these companies were among PTI's customers for the accused products.  <u>See</u> Opp. to Mot. to Dismiss, <u>Powertech Technology, Inc. v. Tessera, Inc.</u> (<u>PTI I</u>), Case No. 10-945 (N.D. Cal.), Docket No. 33; <u>Powertech Technology, Inc. v. Tessera, Inc.</u>, 660 F.3d 1301, 1304 (Fed. Cir. 2011).

In August 2009, the Administrative Law Judge (ALJ) in the 630 Investigation issued an initial determination, finding, among other things, that for uBGA products, "Tessera's patent rights are exhausted as to those accused products purchased from Tessera's licensees," precluding any liability based on these products.  <u>Tessera v. ITC</u>, 646 F.3d 1357, 1363 (Fed. Cir. 2011) (summarizing the ALJ's conclusions).  On January 4, 2010, the ITC issued its final determination in the 630 Investigation, affirming the ALJ's finding of patent exhaustion.  <u>Id.</u> (summarizing the ITC's holding).

---

[1] The Texas action was subsequently stayed pending the final resolution of the 630 Investigation.  Order, <u>Tessera, Inc. v. A-DATA Tech. Co.</u>, No. 07-534 (E.D. Tex. Feb. 28, 2008), Docket No. 48.

On March 5, 2010, several months after the ITC issued its final determination in the 630 Investigation, PTI filed an action for declaratory relief in this Court. See Compl., PTI I, Docket No. 1. In that case, PTI sought declarations of non-infringement and invalidity of the '106 patent and maintained that it faced an imminent threat of injury because Tessera had accused PTI's customers of infringement based on PTI-packaged products. On April 1, 2010, Tessera moved to dismiss the case for lack of subject matter jurisdiction, stating that, to its knowledge, "PTI is a licensee in good standing and it and its customers therefore enjoy protection against any suit accusing its licensed products of infringement of the '106 patent or any other licensed patent." Mot. to Dismiss, PTI I, Docket No. 14, 6. Tessera also asserted that its license with PTI "protects PTI and its customers." Id. at 3. In June 2010, this Court dismissed the action for lack of subject matter jurisdiction, finding that there was no Article III case or controversy between the parties, because Tessera had explicitly excluded licensed products from its enforcement actions. Powertech Technology, Inc. v. Tessera, Inc., 2010 U.S. Dist. Lexis 53621, at *7-8 (N.D. Cal.).

On May 23, 2011, the Federal Circuit affirmed in part the ITC's final determination in the 630 Investigation and reversed it in part.[2] In particular, the Federal Circuit upheld the finding of patent exhaustion for the infringement accusations against the uBGA products, and stated that because "Tessera's licensees were

_____

[2] The Federal Circuit also affirmed the ITC's determination that the wBGA products did not infringe the '106 patent. Tessera v. ITC, 646 F.3d at 1366-67.

4

United States District Court
For the Northern District of California

authorized to sell the accused products" at the time of sale without reservation, Tessera could not subsequently assert its patent rights against the licensees' customers. <u>Tessera v. ITC</u>, 646 F.3d at 1369-71.  In so holding, the court rejected Tessera's argument that its licensees' sales to their customers were initially unauthorized until the time that the licensee remitted the related royalty payment to Tessera which, under its licensing agreements, may not happen for months after the products were sold.  <u>Id.</u> at 1370.

Several months later, on September 30, 2011, the Federal Circuit reversed this Court's dismissal in <u>PTI I</u>, finding that a controversy did exist between the parties.  <u>Powertech Technology, Inc. v. Tessera, Inc.</u>, 660 F.3d 1301, 1307-10 (Fed. Cir. 2011). On appeal, Tessera had again argued that it had not accused PTI's products, and that "PTI has paid all the royalties due. . . . PTI and its customers therefore enjoy protection against suit on PTI's licensed products on any of the hundreds of licensed patents, of which the '106 patent is but one."  Corrected Non-Confidential Brief of Defendant-Appellee Tessera, Inc. 4, <u>Powertech</u>, Case No. 10-1489 (Fed. Cir. Jan. 18, 2011).  In its decision, the Federal Circuit rejected Tessera's position that it had not accused PTI's products as inconsistent with the position that Tessera had argued before it in the ITC action, that the products were initially unauthorized until the royalty payments were subsequently made and that some licensees, including PTI, had underpaid their royalties or paid them late, so exhaustion was not triggered.  The court specifically noted that

> we have no doubt that PTI's customers and products were specifically targeted in [the ITC and Texas actions]. For example, witnesses for Elpida testified that the accused products in the ITC and Texas actions were licensed from several licensees, including PTI.  Indeed, Tessera's infringement expert in the ITC action focused part of his analysis on an Elpida wBGA chip that was clearly packaged by PTI and identified with a PTI model number.

Powertech, 660 F.3d at 1308 n.4.

A week later, on October 6, 2011, PTI notified Tessera by letter that PTI believed that Tessera was in breach under the TCC License.  Compl. ¶ 20.

PTI initiated the current case on December 6, 2011.  Docket No. 1.  PTI alleges that Tessera breached the TCC License by initiating an investigation in the ITC accusing PTI's products, without first providing sixty days' notice to PTI, terminating the license and providing notice of the termination, as required in Paragraph XIV.A of the TCC License.  Compl. ¶¶ 3-8.  PTI contends that Tessera breached the License Grant provision of the TCC License by targeting PTI's products and customers, even though PTI had fully complied with the TCC License and paid royalties, without first terminating the TCC License.  Compl. ¶¶ 9-10.  PTI further argues that Tessera breached this provision by accusing the products even though its patent rights with respect to them were exhausted.  Compl. ¶¶ 11-12.  PTI asserts claims for: (1) declaratory judgment that PTI may terminate the TCC License; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing.

DISCUSSION

Tessera moves to dismiss PTI's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Tessera alternatively seeks to

strike PTI's complaint under California's anti-Strategic Lawsuit
Against Public Participation (anti-SLAPP) statute, Cal. Code Civ.
Proc. § 425.16(b).

I.   Motion to Dismiss

   A. Legal Standard

     A complaint must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief."  Federal
Rule of Civil Procedure 8(a).  On a motion under Rule 12(b)(6) for
failure to state a claim, dismissal is appropriate only when the
complaint does not give the defendant fair notice of a legally
cognizable claim and the grounds on which it rests.  Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering
whether the complaint is sufficient to state a claim, the court
will take all material allegations as true and construe them in
the light most favorable to the plaintiff.  NL Indus., Inc. v.
Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this
principle is inapplicable to legal conclusions; "threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements," are not taken as true.  Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

     When granting a motion to dismiss, the court is generally
required to grant the plaintiff leave to amend, even if no request
to amend the pleading was made, unless amendment would be futile.
Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
F.2d 242, 246-47 (9th Cir. 1990).  In determining whether
amendment would be futile, the court examines whether the
complaint could be amended to cure the defect requiring dismissal
"without contradicting any of the allegations of [the] original

United States District Court
For the Northern District of California

complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

B. Discussion

Tessera argues that PTI's claims against it are barred under the <u>Noerr-Pennington</u> doctrine, which provides that a defendant is immune from liability for claims based on its exercise of its First Amendment right to petition the government for redress of grievances. <u>United Mine Workers of America v. Pennington</u>, 381 U.S. 657, 669 (1965); <u>Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961); <u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 929 (9th Cir. 2006). <u>See also</u> U.S. Const. amend. 1 ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). In response, PTI argues that its claims against Tessera are not based on Tessera's petitioning activity and that the <u>Noerr-Pennington</u> doctrine does not apply to claims based on the breach of a private contractual obligation.

"The <u>Noerr-Pennington</u> doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" <u>Kearney v. Foley & Lardner, LLP</u>, 590 F.3d 638, 643-44

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

(9th Cir. 2009) (quoting <u>Sosa</u>, 437 F.3d at 929).  "It initially emerged in the antitrust context."  <u>Id.</u> at 644 (citations omitted).  The Supreme Court based the creation of the doctrine in part on "the principle that [it] would not 'lightly impute to Congress an intent to invade . . . freedoms' protected by the Bill of Rights, such as the right to petition."  <u>BE & K Constr. Co. v. NLRB</u>, 536 U.S. 516, 525 (2002) (quoting <u>Noerr</u>, 365 U.S. at 138).  "Recognizing that the 'right to petition extends to all departments of the government' and includes access to courts, the Supreme Court extended the doctrine to provide immunity for the use of 'the channels and procedures' of state and federal courts to advocate causes."  <u>Id.</u>  (quoting <u>Sosa</u>, 437 F.3d at 929-30).

Because "<u>Noerr-Pennington</u> is a label for a form of First Amendment protection," the Ninth Circuit has stated that "to say that one does not have <u>Noerr-Pennington</u> immunity is to conclude that one's petitioning activity is unprotected by the First Amendment."  <u>White v. Lee</u>, 227 F.3d 1214, 1231 (9th Cir. 2000) (declining to consider that whether the doctrine "provides greater protection than the First Amendment").  <u>See also</u> <u>Kottle v. N.W. Kidney Ctrs.</u>, 146 F.3d 1056, 1059 (9th Cir. 1998) ("the doctrine is a direct application of the Petition Clause").  In the antitrust context, the Ninth Circuit has stated, "Because the <u>Noerr-Pennington</u> doctrine grows out of the Petition Clause, its reach extends only so far as necessary to steer the Sherman Act clear of violating the First Amendment."  <u>Freeman v. Lasky, Haas & Cohler</u>, 410 F.3d 1180, 1184 (9th Cir. 2005).

"The Supreme Court has since held that <u>Noerr-Pennington</u> principles 'apply with full force in other statutory contexts'

outside antitrust." <u>Kearney</u>, 590 F.3d at 644 (quoting <u>Sosa</u>, 437 F.3d at 930). In 2008, the Ninth Circuit found that the doctrine applies to state law tort claims. <u>Theme Promotions, Inc. v. News Am. Mktg. FSI</u>, 546 F.3d 991, 1006-1007 (9th Cir. 2008) (considering a claim for tortious interference with prospective economic advantage under California law); <u>see also</u> <u>Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.</u>, 858 F.2d 1075 (5th Cir. 1988)) (applying doctrine to state law claim for tortious interference with contracts).

While the <u>Noerr-Pennington</u> doctrine protects "those who petition the government for redress . . . from antitrust, statutory, or tort liability," <u>Luxpro Corp. v. Apple Inc.</u>, 2011 U.S. Dist. LEXIS 35008 (N.D. Cal.), Tessera provides no compelling authority that the doctrine immunizes against breach of contract claims. None of the cases upon which Tessera relies directly address the doctrine's applicability to contract claims. In <u>Gunderson v. Univ. of Alaska</u>, 902 P.2d 323, 326-27 & n.4 (Alaska 1995), the Alaska Supreme Court discussed the <u>Noerr-Pennington</u> doctrine in relation to common law tort claims for interference with contractual relations and interference with prospective advantage, not claims for breach of contract. While in <u>Gateway Western Ry. v. Terminal R.R. Ass'n of St. Louis</u>, 1998 U.S. Dist. LEXIS 4614 (S.D. Ill.), the court does not make clear what causes of action were asserted in the case, it observed that "courts have extended the protections of the <u>Noerr-Pennington</u> doctrine to insulate parties from claims alleging intentional interference with a contract right or other economic expectation," thus finding the claims in the case barred because "the courts view the First

**United States District Court**
For the Northern District of California

Amendment right to petition the government for redress to be superior to contract rights as well" as to antitrust claims. <u>Id.</u> at *7 (citing <u>Village of Lake Barrington v. Hogan</u>, 272 Ill. App. 3d 225, 233 (1995) (addressing tortious interference with contract and economic advantage in relation to Illinois state privileges)). In <u>Bethany Bldg., Inc. v. Dungan Civic Ass'n</u>, 2003 Phila. Ct. Com. Pl. LEXIS 20 (2003), the court examined the conduct complained of in the complaint as a whole and found that the case, which included nine separate charges, was barred by the <u>Noerr-Pennington</u> doctrine, without any separate analysis of the applicability of the doctrine to the breach of contract claim. <u>Id.</u> at *4-9. However, the court separately held that the breach of contract claim failed as a matter of law, because the plaintiffs had not alleged the existence of an enforceable contract between them and any defendant. <u>Id.</u> at *9. Similarly, in <u>Tessera, Inc. v. United Test & Assembly Ctr.</u>, Case No. RG08410327 (Cal. Sup. Ct. 2009), the Alameda County Superior Court held, without elaboration or discussion, that claims of breach of contract, breach of the covenant of good faith and fair dealing and violation of the UCL were barred by the state law litigation privilege and the <u>Noerr-Pennington</u> doctrine, without separating the two privileges or the various causes of action.

Even if the <u>Noerr-Pennington</u> doctrine could apply in the context of claims for breach of contract and of the implied covenant of good faith and fair dealing, it would not bar PTI's claims in this matter. In <u>BE & K</u>, "the Court adopted a three-part test to determine whether the defendant's conduct is immunized: (1) identify whether the lawsuit imposes a burden on petitioning

United States District Court
For the Northern District of California

1   rights, (2) decide whether the alleged activities constitute

2   protected petitioning activity, and (3) analyze whether the

3   statutes at issue may be construed to preclude that burden on the

4   protected petitioning activity."  Kearney, 590 F.3d at 644 (citing

5   BE & K, 536 U.S. at 530-33, 535-37).

6        PTI's lawsuit does not impose a burden on Tessera's

7   petitioning rights.  While, as PTI acknowledges, "Tessera has the

8   right to petition the government for redress, by among other

9   things, bringing an ITC investigation," Opp. at 11, to the extent

10  that Tessera has waived these rights through contract, the

11  Noerr-Pennington doctrine does not shield Tessera from liability

12  for failing to comply with that contract.  In this case, PTI

13  accuses Tessera of breaching the contract between the parties by

14  failing to comply with the requirements of the agreement,

15  including to provide notice and to terminate the TCC License prior

16  to bringing the ITC Investigation, not simply by instituting that

17  proceeding.  Thus, Noerr-Pennington does not prevent PTI from

18  asserting these claims.

19  II.  Motion to Strike under California's Anti-SLAPP Statute

20     A.   Legal Standard

21          California's anti-SLAPP statute provides,

22          A cause of action against a person arising from any act
            of that person in furtherance of the person's right of
23          petition or free speech under the United States
            Constitution or the California Constitution in
24          connection with a public issue shall be subject to a
            special motion to strike, unless the court determines
25          that the plaintiff has established that there is a
            probability that the plaintiff will prevail on the
26          claim.

27  Cal. Civ. Proc. Code § 425.16(b)(1).  California anti-SLAPP

28  motions to strike are available to litigants proceeding in federal

court.  Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206 (9th Cir. 2005).

Courts analyze these motions in two steps.  "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech."  Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted).  "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims."  Id.

"At [the] second step of the anti-SLAPP inquiry, the required probability that [a party] will prevail need not be high."  Hilton v. Hallmark Cards, 580 F.3d 874, 888-89 (9th Cir. 2009).  A plaintiff must show "only a 'minimum level of legal sufficiency and triability.'"  Mindys, 611 F.3d at 598 (quoting Linder v. Thrifty Oil Co., 23 Cal. 4th 429, 438 n.5 (2000)).  The plaintiff need only "state and substantiate a legally sufficient claim."  Mindys, 611 F.3d at 598 (citation and internal quotation marks omitted).  In conducting its analysis, the "court 'does not weigh the credibility or comparative probative strength of competing evidence,' but 'should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'"  Id. at 599 (quoting Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 821 (2002)).

13

B.   Discussion

   1.   Arising from

      The parties do not dispute that Tessera's filing and pursuit of the ITC action constitute protected activities within the meaning of the anti-SLAPP statute.  Instead, they dispute whether the instant complaint "arises from" those activities, including whether the anti-SLAPP statute can apply to claims of breach of contract and of the implied covenant.

      For this determination, "the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity."  Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002) (emphasis in original).  In Navellier, the California Supreme Court held that a breach of contract claim may fall within the scope of the anti-SLAPP statute, because "[n]othing in the statute itself categorically excludes any particular type of action from its operation."  Id. at 92.  Instead of focusing on "the form of the plaintiff's cause of action," the statute focuses on "the defendant's activity that gives rise to his or her asserted liability."  Id.; see also Cotati, 29 Cal. 4th at 78 ("the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.").  In that case, the court found that the breach of contract and other claims arose out of protected litigation activity because, "but for the federal lawsuit and [defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis."  Navellier, 29 Cal. 4th at 90.

United States District Court
For the Northern District of California

14

United States District Court
For the Northern District of California

When, as here "a pleading contains allegations regarding both protected and unprotected activity, 'it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies.'" PrediWave Corp. v. Simpson Thacher & Bartlett LLP, 179 Cal. App. 4th 1204, 1219-20 (2009) (quoting Martinez v. Metabolife Internat., Inc., 113 Cal. App. 4th 181, 188 (2003)). "Incidental allegations regarding protected activity do not 'subject the cause of action to the anti-SLAPP statute.'" Id. at 1220 (quoting Martinez, 113 Cal. App. 4th at 188. "The 'principal thrust or gravamen' test serves the legislative intent" that the anti-SLAPP statute "be broadly interpreted," because a plaintiff cannot "deprive a defendant of anti-SLAPP protection by bringing a complaint based upon both protected and unprotected conduct." Club Members for an Honest Election v. Sierra Club, 45 Cal. 4th 309, 319 (2008).

Here, PTI accuses Tessera of breach of contract and breach of the implied covenant of good faith and fair dealing for petitioning the ITC without first giving notice and terminating the TCC License, as agreed in that contract. But for Tessera's filing and prosecution of the ITC action, PTI would have no basis for the claims against Tessera alleged here. The central thrust of PTI's complaint implicates Tessera's protected activity, because, without the allegations regarding Tessera's protected activity, PTI would be unable to state a claim against Tessera. Thus, PTI's complaint arises from Tessera's protected activity for the purposes of the anti-SLAPP statute.

As noted by the California Supreme Court in Navallier, such a finding does not mean that Tessera cannot be sued for breaching

15

the TCC License because its alleged breach was related to petitioning activity.  29 Cal. 4th at 93.  The statute does not bar any suit that possesses "minimal merit."  Id.

    2.   Probability of prevailing

The "essential elements" of a breach of contract claim are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968).  Tessera does not dispute that there is an enforceable contract between the parties or that PTI has fully performed its obligations thereunder.  Instead, Tessera argues that PTI has failed to meet its burden of establishing a probability of prevailing on its claims, because its claims are barred by the Noerr-Pennington doctrine, Tessera has not breached the TCC License, PTI has not established that it was damaged, and PTI's claims are barred by waiver, forfeiture, laches and estoppel.

The Court has already addressed, and rejected, Tessera's contentions related to the Noerr-Pennington doctrine.  The Court further notes that, in addressing the second prong of the anti-SLAPP inquiry, the California Supreme Court has recognized that "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." Navellier, 29 Cal. 4th at 94.  The Court also finds Tessera's remaining arguments unavailing for the reasons discussed below and declines to strike PTI's complaint.

a. Breach

Tessera does not dispute that it did failed to give notice to PTI or terminate the TCC License before instituting the ITC action or before arguing in the ITC that PTI's products were unlicensed for the period of time before PTI paid royalties. Instead, Tessera argues that it did not breach the TCC License for three reasons.

First, Tessera argues that the forum selection clause relates to disputes between the parties only and it did not name PTI in the ITC action. PTI has submitted evidence that Tessera itself has previously taken the position that the license agreement precludes any suit against PTI or against PTI's customers in which PTI's products are accused, and thus PTI has offered at least some evidence that would demonstrate that the contract's ambiguous terms may be interpreted to encompass suits in which PTI's products are accused.

Tessera also argues that it did not breach the agreement, because PTI had encouraged it to file the action against PTI's customers, and there was thus no dispute or disagreement between the parties that would have triggered the forum selection clause's requirements of notice and termination. Tessera also relies on this alleged encouragement in support of its affirmative defenses of waiver and equitable estoppel. However, the email correspondence between the parties on which Tessera relies does not support its position. Several of the emails to which Tessera points relate to a separate ITC Investigation, No. 337-TA-605, which is not at issue here. In some of the other emails, which do relate to the 630 Investigation, PTI encouraged Tessera to proceed

United States District Court
For the Northern District of California

against several companies that were getting at least some of their products from unlicensed sources and to tell another company to use only licensed sources. This does not establish that PTI encouraged Tessera to accuse the PTI-packaged products as well. In other emails, rather than encouraging Tessera to bring an ITC action, PTI appears to have been defending itself against Tessera's characterization of the ITC action as something that Tessera was bringing to help PTI, by arguing that Tessera brought the suit to benefit itself primarily, in order to make sure that companies like PTI continue to pay royalties.

Finally, Tessera argues that it had tried to exclude PTI's licensed products from the 630 Investigation consistently throughout the ITC process. However, as discussed above, the Federal Circuit has already rejected this characterization of its arguments.

Accordingly, Tessera's arguments do not defeat PTI's showing of a minimum level of the legal sufficiency and triability of its claim that Tessera breached the TCC License. Tessera has also not established that it is likely to succeed on its affirmative defenses of waiver and equitable estoppel.

b. Damages

Tessera argues that PTI has not meet its anti-SLAPP burden as to its second and third causes of action, for breach of contract and breach of the implied covenant, because PTI cannot establish that it was damaged by Tessera's alleged breach. Tessera also contends that PTI cannot reclaim royalty payments that it has already made.

**United States District Court**
For the Northern District of California

PTI puts forward several theories of damages.  PTI asserts that it was harmed because, if Tessera had complied with the terms of the TCC License and had terminated the agreement, PTI would not have had to continue to pay royalties, which totaled more than $200 million.  At the hearing, PTI also argued that its relationship with its customers was damaged by Tessera's breach, because PTI had to charge a royalty to its customers while they were being sued by Tessera.

Tessera acknowledges that PTI made royalty payments after Tessera instituted the 630 Investigation without first terminating the TCC License and providing the required notice.  Mot. at 21-22. Tessera, however, contends that PTI cannot recover these royalty payments as a matter of law, because California law precludes recovery of royalty payments made voluntarily with knowledge of the facts.  Id. (citing Pac. Gas & Elec. Co. v. Zuckerman, 189 Cal. App. 3d 1113, 1144 (1987); Western Gulf Oil Co. v. Title Ins. & Tr. Co., 92 Cal. App. 2d 257, 266 (1949)).

Here, however, PTI did not have full knowledge of the facts at the time of the payments.  PTI made these payments with the understanding that its products and customers would be free from suit.  During the ITC and Texas proceedings, Tessera represented to PTI and to this Court that it was not accusing PTI-packaged products in those suits.  After the Federal Circuit issued its decision in Powertech Technology, Inc. v. Tessera, Inc., 660 F.3d 1301 (Fed. Cir. 2011), it became evident that Tessera was taking inconsistent positions and was in fact accusing products that PTI had sold to its customers.

1    Thus, PTI has met its burden to establish the minimum legal

2    sufficiency and factual triability of its damages claims.  This

3    does not mean that PTI will ultimately establish that it has been

4    harmed to the extent claimed.

5              c. Forfeiture and Laches

6    Tessera asserts several affirmative defenses based on PTI's

7    purported failure to raise these claims in a timely manner,

8    arguing that PTI should have done so when Tessera first initiated

9    the ITC proceedings.  Tessera does not dispute that PTI brought

10   this action within the limitations period.  Further, Tessera

11   maintained in the prior proceedings before this Court that it was

12   not accusing PTI-packaged products, and it was not until the

13   Federal Circuit issued its decision on September 30, 2011 that it

14   became clear that Tessera was actually doing so in the other

15   actions.  As noted above, PTI provided notice to Tessera of its

16   breach a week later, and filed suit sixty days after that.  On

17   these facts, it is not likely that Tessera will be able to prove

18   that PTI delayed in bringing these claims.

19        3. Fees and costs

20   Tessera and PTI both seek fees and costs for the anti-SLAPP

21   motion.  A party who prevails on an anti-SLAPP motion "shall be

22   entitled to recover his or her attorneys' fees and costs."  Cal.

23   Code Civ. Proc. § 425.16(c).  In contrast, a prevailing plaintiff

24   is entitled to fees and costs only if "the court finds that a

25   special motion to strike is frivolous or is solely intended to

26   cause unnecessary delay."  Id.  "'Frivolous' means (A) totally and

27   completely without merit or (B) for the sole purpose of harassing

28   an opposing party."  Cal. Code Civ. Proc. § 128.5(b)(2).

United States District Court
For the Northern District of California

1    Because Tessera does not prevail on its motion to strike, the

2    Court does not award it fees and costs.  Because the Court does

3    not find that Tessera's motion was frivolous or only intended to

4    cause unnecessary delay, the Court also declines to award fees and

5    cost to PTI.

6                              CONCLUSION

7         For the reasons set forth above, the Court DENIES Tessera's

8    motion to dismiss and to strike PTI's complaint (Docket No. 20).

9         IT IS SO ORDERED.

10

11   Dated: 5/21/2012                    _____
                                         CLAUDIA WILKEN
12                                       United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28