IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWERTECH TECHNOLOGY, INC., a Taiwanese corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>TESSERA, INC., a Delaware corporation,<br><br>    Defendant.<br>_____/ | No. C 11-6121 CW<br><br>ORDER GRANTING IN PART, AND DENYING IN PART, TESSERA'S MOTION TO DISMISS AND STRIKE (Docket No. 107) AND GRANTING MOTION AND STIPULATION TO FILE UNDER SEAL (Docket Nos. 111 and 112) |

Defendant Tessera, Inc. moves to dismiss the fifth claim for patent misuse asserted against it by Powertech Technology, Inc. (PTI) and to strike portions of PTI's fourth claim for fraud. Tessera asks that PTI not be allowed to amend the complaint to remedy the problems it raises. PTI opposes Tessera's motion in part and asserts that it can file amended claims as a matter of right. Alternatively, PTI seeks leave of the Court to amend the claims. The parties also seek to seal PTI's proposed second amended complaint (2AC). The Court took Tessera's motion under submission on the papers. Having considered the papers filed by the parties, the Court GRANTS Tessera's motion in part and DENIES it in part. The Court also GRANTS the motion and stipulation to file under seal.

## BACKGROUND

On October 20, 2003, PTI and Tessera entered into a contract called Tessera Compliant Chip License Agreement (TCC License). Compl., Appendix A (TCC License). The TCC License allows PTI to use Tessera's patents to make integrated circuit packages and to

use or sell these products world-wide. Compl. ¶ 1; TCC License ¶ II.A. In return, PTI is obliged to make certain royalty payments to Tessera. See TCC License § III.

In December 2007, Tessera initiated ITC Investigation No. 337-TA-630 (the 630 Investigation), accusing certain companies of infringing certain Tessera patents, including its 5,663,106 patent ('106 patent), through the importation and sale of particular wBGA and uBGA products. Compl. ¶ 5. Tessera also simultaneously filed a civil action in the Eastern District of Texas, in which it asserted the same patents against the same defendants for the same products as in the ITC action. Complaint, Tessera, Inc. v. A-DATA Tech. Co., No. 07-534 (E.D. Tex. Dec. 7, 2007), Docket No. 1.[1]

PTI was not named as a respondent in the ITC action or as a defendant in the Texas action, but Powerchip Semiconductor Corp. (PSC), ProMos Technologies Corp., and Elpida Memory Inc. were. In related litigation, PTI has since asserted that these companies were among PTI's customers for the accused products. See Opp. to Mot. to Dismiss, Powertech Technology, Inc. v. Tessera, Inc. (PTI 945 case), Case No. 10-945 (N.D. Cal.), Docket No. 33; Powertech Technology, Inc. v. Tessera, Inc., 660 F.3d 1301, 1304 (Fed. Cir. 2011).

In August 2009, the Administrative Law Judge (ALJ) in the 630 Investigation issued an initial determination, finding, among other things, that for uBGA products, "Tessera's patent rights are

---

[1] The Texas action was subsequently stayed pending the final resolution of the 630 Investigation. Order, Tessera, Inc. v. A-DATA Tech. Co., No. 07-534 (E.D. Tex. Feb. 28, 2008), Docket No. 48.

2

exhausted as to those accused products purchased from Tessera's licensees," precluding any liability based on these products. Tessera v. ITC, 646 F.3d 1357, 1363 (Fed. Cir. 2011) (summarizing the ALJ's conclusions). On January 4, 2010, the ITC issued its final determination in the 630 Investigation, affirming the ALJ's finding of patent exhaustion. Id. (summarizing the ITC's holding).

On March 5, 2010, several months after the ITC issued its final determination in the 630 Investigation, PTI filed an action for declaratory relief in this Court. See Compl., PTI 945 case, Docket No. 1. In that case, PTI sought declarations of non-infringement and invalidity of the '106 patent and maintained that it faced an imminent threat of injury because Tessera had accused PTI's customers of infringement based on PTI-packaged products. On April 1, 2010, Tessera moved to dismiss the case for lack of subject matter jurisdiction, stating that, to its knowledge, "PTI is a licensee in good standing and it and its customers therefore enjoy protection against any suit accusing its licensed products of infringement of the '106 patent or any other licensed patent." Mot. to Dismiss, PTI 945 case, Docket No. 14, 6. Tessera also asserted that its license with PTI "protects PTI and its customers." Id. at 3. In June 2010, this Court dismissed the action for lack of subject matter jurisdiction, finding that there was no Article III case or controversy between the parties, because Tessera had explicitly excluded licensed products from its enforcement actions. Powertech Technology, Inc. v. Tessera, Inc., 2010 U.S. Dist. Lexis 53621, at *7-8 (N.D. Cal.).

3

On May 23, 2011, the Federal Circuit affirmed in part the ITC's final determination in the 630 Investigation and reversed it in part.[2] In particular, the Federal Circuit upheld the finding of patent exhaustion with respect to the infringement accusations against the uBGA products, and stated that because "Tessera's licensees were authorized to sell the accused products" at the time of sale without reservation, Tessera could not subsequently assert its patent rights against the licensees' customers. Tessera v. ITC, 646 F.3d at 1369-71. In so holding, the court rejected Tessera's argument that its licensees' sales to their customers were initially unauthorized until the time that the licensee remitted the related royalty payment to Tessera which, under its licensing agreements, may not have happened for months after the products were sold. Id. at 1370.

Several months later, on September 30, 2011, the Federal Circuit reversed this Court's dismissal in the PTI 945 case, finding that a controversy did exist between the parties. Powertech Technology, Inc. v. Tessera, Inc., 660 F.3d 1301, 1307-10 (Fed. Cir. 2011). On appeal, Tessera had again argued that it had not accused PTI's products, and that "PTI has paid all the royalties due. . . . PTI and its customers therefore enjoy protection against suit on PTI's licensed products on any of the hundreds of licensed patents, of which the '106 patent is but one." Corrected Non-Confidential Brief of Defendant-Appellee Tessera, Inc. 4, Powertech, Case No. 10-1489 (Fed. Cir. Jan. 18,

---

[2] The Federal Circuit also affirmed the ITC's determination that the wBGA products did not infringe the '106 patent. Tessera v. ITC, 646 F.3d at 1366-67.

4

2011). In its decision, the Federal Circuit rejected Tessera's position that it had not accused PTI's products as inconsistent with the position that Tessera had argued before it in the ITC action, that the products were initially unauthorized until the royalty payments were subsequently made and that some licensees, including PTI, had underpaid their royalties or paid them late, so exhaustion was not triggered. The court specifically noted that

> we have no doubt that PTI's customers and products were specifically targeted in [the ITC and Texas actions]. For example, witnesses for Elpida testified that the accused products in the ITC and Texas actions were licensed from several licensees, including PTI. Indeed, Tessera's infringement expert in the ITC action focused part of his analysis on an Elpida wBGA chip that was clearly packaged by PTI and identified with a PTI model number.

Powertech, 660 F.3d at 1308 n.4.

A week later, on October 6, 2011, PTI notified Tessera by letter that PTI believed that Tessera was in breach under the TCC License. Compl. ¶ 20.

PTI initiated the current case on December 6, 2011. Docket No. 1. In the original complaint, PTI asserted claims for: (1) declaratory judgment that PTI may terminate the TCC License; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing.

On May 21, 2012, the Court denied Tessera's motion to dismiss PTI's complaint and to strike it under California's anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, Cal. Code Civ. Proc. § 425.16(b). Docket No. 93.

On June 1, 2012, the parties stipulated to allow PTI to file a first amended complaint (1AC), adding claims for fraud, patent misuse and declaratory judgment interpreting the TCC License.

5

1  Docket No. 99. PTI filed the 1AC on June 3, 2012. Docket No.
2  102. The Court granted the parties' stipulation on June 4, 2012.
3  Docket No. 103.
4      On June 19, 2012, Tessera filed the instant motion. Docket
5  No. 107. In the motion, Tessera seeks to dismiss PTI's claim for
6  patent misuse and to strike portions of its claim for fraud.
7      On July 3, 2012, PTI filed its opposition to Tessera's
8  motion. Docket No. 109. At the same time, PTI moved, and the
9  parties stipulated, to file under seal an unredacted version of
10  PTI's proposed 2AC. Docket Nos. 111, 112. PTI also lodged a copy
11  of the 2AC with the Court. In the stipulation, the parties agree
12  that PTI can file the unredacted 2AC under seal as an exhibit to
13  PTI's opposition to the instant motion. Docket No. 112, 1. In
14  its reply in support of the current motion, Tessera states that
15  PTI's motion to file under seal should be denied, because leave to
16  file the 2AC at all should not be granted, but averred that, if
17  leave to file the 2AC is granted, then certain portions should be
18  filed under seal. Reply at 8 n.6.

## DISCUSSION

20      Tessera moves to dismiss PTI's claim for patent misuse for
21  failure to state a claim. Tessera also seeks to strike portions
22  of PTI's claim for fraud on the basis that it accuses Tessera of
23  conduct that is protected by California's litigation privilege.
24  Finally, Tessera seeks to strike the phrase "including but not
25  limited to" from the fraud claim on the basis that this phrase
26  violates the particularity requirement of Rule 9(b).
27      PTI responds that the phrase "including but not limited to"
28  does not diminish its specific allegations that meet Rule 9(b)'s

6

1 particularity requirement.  PTI also contends that it can file the
2 2AC as a matter of right and thereby cure the possible defects in
3 the 1AC or, alternatively, that the Court should grant it leave to
4 amend.
5 I.   Amendment as a Matter of Right
6    PTI asserts that it does not need leave of the Court to amend
7 its claims and that it may do so as a matter of right.  Rule
8 15(a)(1) provides,

> A party may amend its pleading once as a matter of
> course within: . . . if the pleading is one to which a
> responsive pleading is required, 21 days after service
> of a responsive pleading or 21 days after service of a
> motion under Rule 12(b), (e), or (f), whichever is
> earlier.

Federal Rule of Civil Procedure 15(a)(1)(B).

   Tessera replies that the 2AC is not an amended pleading, regardless of how PTI labeled it, and is instead a supplemental pleading, because it "included allegations regarding events that happened after" the 1AC was filed.  See Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1337 (Fed. Cir. 2008) (citing Federal Rule of Civil Procedure 15(d)).  Tessera is correct that, in addition to changing other allegations related to conduct prior to the date on which the 1AC was filed, the proposed 2AC also contains five paragraphs with new allegations related to PTI's termination of the TCC License on June 30, 2012 and Tessera's reactions thereto.  See 2AC ¶¶ 74-77, 110.  In its opposition to the instant motion, PTI relies in part on these new paragraphs to argue that it has "pled facts that establish a substantial controversy between the Parties," because Tessera "has stated publicly that it will defend the license in court" and so PTI "has

7

a reasonable apprehension that Tessera will attempt to enforce a purported requirement that PTI continue to pay royalties on wBGA products." Opp. at 8.

Because the proposed 2AC is a supplemental pleading as well as an amended pleading, it is governed by Rule 15(d) and not Rule 15(a). See Prasco, 537 F.3d at 1337 n.5. Under Rule 15(d), a court may permit a party to serve a supplemental pleading "[o]n motion and reasonable notice" and "on just terms." There is no provision for supplementation as a matter of right. Accordingly, the Court rejects PTI's argument that it is allowed to file the 2AC as a matter of right.

The Court nonetheless has discretion to allow the supplemental pleading "upon reasonable notice and upon such terms as are just." Id. (citing Rule 15(d)). The Court construes PTI's response as a motion to supplement its pleadings to include the allegations related to its termination of the TCC License on June 30, 2012 and Tessera's reactions thereto. Tessera has had an opportunity to address these supplemental allegations in its reply and has identified no reason why inclusion of these allegations would be unjust. Accordingly, the Court exercises its discretion to allow PTI to add these supplemental allegations to its pleading.

II. Motion to Dismiss

  A. Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint

8

does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

B. Discussion

Tessera seeks to dismiss PTI's claim for patent misuse, arguing that patent misuse is an affirmative defense and cannot be asserted as an independent actionable tort. PTI does not defend the patent misuse claim, but instead seeks leave to amend to assert a declaratory relief claim for patent misuse. Tessera replies that the proposed declaratory relief claim as alleged in

9

the proposed 2AC is improperly plead, because it seeks relief that cannot be granted for such a claim and because it does not name particular patents that it believes could be the subject of an enforcement action. Since the latter argument was raised for the first time in the reply, PTI has not had an opportunity to respond to it.

Both parties agree that courts have permitted parties to raise patent misuse through an action for declaratory relief. Mot. at 4; Opp. at 6. See B. Braun Medical, Inc. v. Abbott Laboratories, 124 F.3d 1419, 1428 (Fed. Cir. 1997) (noting that the district court could enter a declaratory judgment that the patent was unenforceable due to misuse); Inamed Corp. v. Kuzmak, 275 F. Supp. 2d 1100, 1124 (C.D. Cal. 2002). However, as Tessera argues, the relief that may be sought for such a claim is very limited.

"Patent misuse arose, as an equitable defense available to the accused infringer, from the desire 'to restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy.'" B. Braun, 124 F.3d at 1427 (quoting Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 704 (Fed. Cir. 1992)). "When used successfully, this defense results in rendering the patent unenforceable until the misuse is purged." Id. "It does not, however, result in an award of damages to the accused infringer." Id. Thus, "the defense of patent misuse may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment counterclaim." Id. at 1428.

10

Such a declaratory relief claim may be used "solely to enjoin defendant from asserting a patent infringement claim against plaintiff" but any such injunction "must limit its effect to rendering the patent unenforceable only until the misuse is purged." Rosenthal Collins Group, LLC v. Trading Tech. Int'l, 2005 U.S. Dist. LEXIS 37504, at *23-24 (N.D. Ill.) (citing B. Braun, 124 F.3d at 1427). While "monetary damages may not be awarded 'under a declaratory judgment counterclaim based on patent misuse,' because patent misuse simply renders the patent unenforceable," after such a finding, the court may consider whether the plaintiff has stated another "substantive claim upon which it is entitled to recover damages," such as through an antitrust or breach of contract theory. B. Braun, 124 F.3d at 1428 & n.5.

PTI's original patent claim sought "recovery of all royalties paid on wBGA products since at least September 24, 2010." 1AC ¶ 108. In the proposed 2AC, in addition to a declaration that the patents are unenforceable until Tessera has purged its patent misuse and an injunction preventing Tessera from enforcing them and the TCC License against PTI until such time, PTI also seeks "termination of the TCC License at least as early as September 24, 2010" and "restitution of all royalties paid on wBGA products since at least September 24, 2010 or the date when the Court determines that the patent misuse began." 2AC ¶¶ 115-120 & p.27. PTI also requests an accounting. Id. at 27. To the extent that the PTI is seeking termination of the license, restitution and an injunction against the TCC License rather than certain patents, such relief is not available through this claim.

11

Tessera also contends that the claim is overly broad, because PTI seeks as relief a declaration that all Tessera patents identified in the TCC License are unenforceable, but only identifies purportedly improper actions regarding three particular patents. "In order to show patent misuse, plaintiff must plead and prove that defendant impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." Rosenthal Collins Group, 2005 U.S. Dist. LEXIS 37504, at *24. In the 2AC, PTI alleges the following in support of this claim:

> 111. PTI's wBGA products were found not to infringe Tessera's '106 patent . . . Tessera's '627 Patent and '977 Patent expired September 24, 2010. Tessera has not asserted that PTI's wBGA products infringe upon any valid claim of any unexpired Tessera Patent. . . .
>
> 112. Tessera asserts and interprets the TCC License to require payment of royalties on PTI's wBGA products even if PTI's wBGA products no longer infringe any valid and unexpired Tessera Patent.
>
> 113. Tessera asserts and interprets the TCC License to require payment of royalties for an indefinite period of time beyond 2027 through a scheme of adding an "ever-expanding" group of patents to the licensed Tessera Patents and thereby extending the expiration date of the TCC License unilaterally and possibly indefinitely.
>
> 114. [If] Tessera's assertions and interpretations are taken as true, then the TCC License represents misuse of the underlying U.S. patents which were initially licensed as well as any U.S. patent that Tessera has added . . .

2AC ¶¶ 111-14. PTI appears to allege that Tessera has misinterpreted the TCC License, not that it has misused all of the underlying patents other than the '106, '627 and '977 patents, even though PTI makes a conclusory statement that misinterpretation of the TCC License constitutes misuse of the underlying patents. PTI, however, has not had an opportunity to

12

defend the allegations in the proposed 2AC, and it may be that PTI could make more specific allegations about particular patents.

Accordingly, the Court GRANTS Tessera's motion to dismiss PTI's claim for patent misuse. PTI is granted leave to amend to assert a declaratory relief claim for patent misuse, provided that it is able to remedy the deficiencies in its proposed 2AC identified above.

III. Motion to Strike

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter." The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Matter is immaterial if it has no essential or important relationship to the claim for relief plead. Id. Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case. Id. "Superfluous historical allegations are a proper subject of a motion to strike." Id. Motions to strike are disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). They should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

13

B. Litigation privilege

Tessera contends that PTI's fraud claim in the 1AC is barred by the state law litigation privilege, because it is based on statements and positions taken during legal proceedings in the ITC, this Court and the Federal Circuit. PTI states that, in its proposed 2AC, it has cured "any possible defect by clarifying that PTI's claim for fraud is based on Tessera's misrepresentation to PTI," and that the allegations of Tessera's litigation activity are "evidence that Tessera intended PTI to rely" on the out-of-court misrepresentations and that PTI's reliance thereon was reasonable. Opp. at 9. Tessera replies that the proposed 2AC still bases the "fraud claim on Tessera's statements in legal proceedings." Reply at 6. Tessera does not appear to dispute that the statements that it made to PTI outside of these proceedings are not protected by the privilege.

California Civil Code section 47(b) provides that communications made in or related to judicial proceedings are absolutely immune from tort liability. The California Supreme Court explains that the purpose of the privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990). "The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing Silberg, 50 Cal. 3d at 212). The privilege also applies

14

to "prelitigation communication" that "relates to litigation that is contemplated in good faith and under serious consideration." Action Apartment Ass'n Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1251 (2007). See also Kearney, 590 F.3d at 650 (allegations of "conduct prior to the litigation . . . may be privileged if reasonably related to the action"). Once these requirements are met, section 47(b) operates as an absolute privilege. Silberg, 50 Cal. 3d at 216. "Any doubt about whether the privilege applies is resolved in favor of applying it." Kashian v. Harriman, 98 Cal. App. 4th 892, 913 (2002).

Here, in the proposed 2AC, PTI alleges that Tessera made false and misleading out-of-court statements to PTI, including that it would not attack licensed PTI-packaged products in the 630 Investigation. 2AC ¶ 103. PTI also contends that Tessera did in fact accuse such products. Id. at ¶ 48. It further alleges that Tessera represented to this Court and to the Federal Circuit that it did not accuse these products, which evidences that Tessera intended to induce PTI to rely on the out-of-court statements, and that PTI's reliance thereon was reasonable. Id. at ¶¶ 45-47.

Tessera is correct that PTI may not assert a fraud claim based on Tessera's in-court statements. However, PTI may base a fraud claim on Tessera's out-of-court statements and use Tessera's in-court statements as evidence to support certain elements thereof.

"The privileges of Civil Code section 47, unlike evidentiary privileges which function by the exclusion of evidence, . . . operate as limitations upon liability." Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal. 3d 1157, 1168

15

(1986). The California Supreme Court has stated that it is "quite clear that section 47(2) has never been thought to bar the evidentiary use of every 'statement or publication' made in the course of a judicial proceeding" and that "while section 47(2) bars certain tort causes of action which are predicated on a judicial statement or publication itself, the section does not create an evidentiary privilege for such statements." Id. "Thus, as an example, those statements can be used for evidentiary purposes to determine a person's intent." Stacy & Witbeck v. City and Cnty. of San Francisco, 36 Cal. App. 4th 1074, 1091 (1995). See also Ambat v. City & Cnty. of San Francisco, 693 F. Supp. 2d 1130, 1145 (N.D. Cal. 2010) ("Section 47 prohibits the use of such statements as a basis for civil liability for certain torts, including defamation, but does not impose any limitation on evidentiary use of such statements, much less prohibit adverse employment actions based on such statements.").

Thus, the litigation privilege does not prevent PTI from using Tessera's in-court statements, for example, to help establish the falsity of Tessera's out-of-court statements, Tessera's intent to induce reliance on the out-of-court statements and the reasonableness of PTI's reliance thereon, as long as PTI does not base its fraud claim on the in-court statements themselves.

Accordingly, the Court GRANTS Tessera's motion to strike the fraud claim as plead in the 1AC, and GRANTS PTI leave to amend its fraud claim as proposed in the 2AC.

16

C. "including but not limited to"

In the 1AC and proposed 2AC, PTI states that "Tessera knowingly made false and misleading statements to PTI including but not limited to:" five specific misrepresentations. 1AC ¶ 95; 2AC ¶ 103.

Tessera argues that the phrase "including but not limited to" should be stricken. Tessera contends that the inclusion of this phrase violates the specificity requirement of Rule 9(b) and is therefore "immaterial."

The Court finds Tessera's argument unpersuasive. Tessera does not dispute that PTI has specifically plead in its fraud claim the "who, what, when, where and how" of the purported misrepresentations. PTI is not required to go beyond Rule 9(b)'s particularity requirement to plead every fact that it may possibly discover or use to support its claims.

Accordingly, the Court DENIES Tessera's motion to strike the phrase "including but not limited to."

IV. Motion and stipulation to seal

PTI seeks leave to file under seal its unredacted proposed 2AC, as well as Appendices A and G through Q. Docket No. 111. These items are attached as Exhibit 1 to the Declaration of Jacob M. Heath in support of its opposition to Tessera's instant motion to dismiss and to strike. The parties have also filed a stipulation agreeing that these items should be filed under seal. Docket No. 112.

The parties seek to seal court records that are closely related to the merits of its case. To establish that the documents are sealable, the party who has designated them as

17

confidential "must overcome a strong presumption of access by showing that 'compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure.'" Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 679 (9th Cir. 2010) (citation omitted). Cf. id. at 678 (explaining that a less stringent "good cause" standard is required to seal discovery documents related to non-dispositive motions). Compelling reasons cannot be established simply by showing that the document is subject to a protective order or by stating in general terms that the material is considered to be confidential, but rather must be supported by a sworn declaration demonstrating with particularity the need to file each document under seal. Civil Local Rule 79-5(a).

PTI states that it seeks to file under seal Appendix A to its proposed 2AC, which contains the Tessera Compliant Chip License Agreement (TCC License), because it contains "proprietary and confidential information, including provisions regarding the calculation, payment, and amount of royalties PTI pays to Tessera on licensed products," and that its disclosure would harm PTI by giving its competitors this proprietary information. Heath Decl. ¶ 16. The Court has previously granted the parties leave to file the TCC License under seal. See Docket Nos. 26, 96. The Court also previously granted permission to file under seal Appendices G through O, which contain confidential and proprietary information regarding the licensing relationship between the parties. Id. PTI represents that Appendices P and Q are presentation slides and handwritten notes taken during a November 3, 2009 meeting between the parties in which they discussed the terms of the TCC License

18

1 and royalty payments. Heath Decl. ¶¶ 14-16. Having reviewed the
2 documents, the Court concludes that the parties have established
3 that Appendices A and G through Q are sealable.

4 PTI also seeks to file its proposed 2AC under seal. PTI
5 represents that the proposed 2AC "references and discusses" the
6 information contained in Appendices A and G through Q. Mot. to
7 Seal at 3. PTI also states that the proposed 2AC discusses
8 statements from the May 2012 depositions of Brian Marcucci in his
9 personal capacity and as the Rule 30(b)(6) designee for Tessera,
10 in which he discussed the business and licensing relationship
11 between the parties. Health Decl. ¶ 3. PTI states that public
12 disclosure of this testimony, which contains information similar
13 to that in Appendices A and G through Q, could cause harm similar
14 to that which would be caused by disclosure of those appendices.
15 Id. See also Hely Decl., Docket No. 98, ¶¶ 2-9. PTI has
16 indicated in the copy provided to the Court the portions of the
17 proposed 2AC that refer to the confidential material and that it
18 seeks to redact in the public version. Thus, the Court finds that
19 the parties have established compelling reasons to seal the
20 unredacted proposed 2AC and to file the redacted version in the
21 public record.

## CONCLUSION

23 For the reasons set forth above, the Court GRANTS in part
24 Tessera's motion to dismiss and to strike and DENIES it in part
25 (Docket No. 107). PTI is granted leave to file an amended and
26 supplemental complaint as allowed above within fourteen days of
27 the date of this Order. If it does so, PTI is granted leave to
28 file an unredacted version of its amended and supplemental

19

complaint and Appendices A and G through Q under seal, and shall file a redacted version in the public record, as set forth above.

If PTI files an amended and supplemental complaint, Tessera shall respond to it within fourteen days after it is filed.  If Tessera moves to dismiss PTI's amended and supplemental complaint, it shall not renew the arguments that the Court rejected herein.  Any motion to dismiss will be decided on the papers.

PTI's motion and the parties' stipulation to file documents under seal are GRANTED (Docket No. 111 and 112).  Within three days of the date of this Order, PTI shall electronically file under seal the redacted version of Exhibit 1 to the Heath declaration in support of its opposition and shall file an unredacted version in the public docket.

IT IS SO ORDERED.

Dated: 8/10/2012

CLAUDIA WILKEN
United States District Judge