IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

POWERTECH TECHNOLOGY INC.,

    Plaintiff,

  v.

TESSERA, INC.,

    Defendant.
_____/
AND ALL RELATED COUNTERCLAIMS
_____/

No. C 11-6121 CW

ORDER OVERRULING POWERTECH TECHNOLOGY, INC.'S OBJECTION TO THE SPECIAL MASTER'S DECEMBER 14, 2012 ORDER (Docket No. 208)

    Plaintiff Powertech Techology, Inc. (PTI) objects to an Order issued by the Special Master on December 14, 2012, addressing whether documents sought by Defendant Tessera, Inc. were protected by the attorney-client privilege.  The Court considers Plaintiff's objection de novo and OVERRULES it (Docket No. 208).

    PTI challenges the Special Master's ruling that its communications with four foreign individuals, who worked in Elpida Memory Inc.'s legal department but were not licensed attorneys, are not protected by attorney-client privilege because these individuals were not "<u>authorized</u> to practice law by an <u>appropriate jurisdiction</u>" and Elpida had no reasonable basis to believe that they were so authorized.  Docket No. 206 (emphasis in original).[1] PTI agrees with the Special Master that, in this case, the

---

[1] PTI sought to establish this privilege in order to argue that its "communications with Elpida are protected from discovery by the common interest doctrine, which allows parties seeking legal advice on a matter of common interest to share privileged materials without waiver."  PTI's Opposition Letter Brief, dated November 26, 2012.

privilege is controlled by California law or that the most relevant legal provisions are set forth in California Evidence Code sections 950, et seq., which set forth the terms of the statutory privilege. PTI also has not disputed that, as the party asserting the privilege, it bears the burden of establishing its existence.

PTI has offered evidence that the four individuals "provide[] legal assistance and act[] as a legal advisor regarding legal issues within the Legal Group" or "play a role equivalent to what is played by lawyers," although they are not qualified as lawyers. Nakashima Decl. ¶¶ 1, 6, 7; Nakashima Suppl. Decl. ¶ 3; Nakashima ITC Testimony 2410:25-2411:3. PTI contends that, because they are foreign legal advisors who are the "functional equivalent" of a lawyer in the United States, communications with them should be considered privileged.

Under California law, a client holds a privilege to prevent the disclosure of confidential communications between client and lawyer. Cal. Evidence Code § 954; Roberts v. City of Palmdale, 5 Cal. 4th 363, 371 (1993). Evidence Code section 952 limits the protected communications to information transmitted between a client and "his or her lawyer." Cal. Evidence Code § 952. In turn, Evidence Code section 950 defines "lawyer" to mean "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Cal. Evidence Code § 950 (emphasis added).

PTI cites Welfare Rights Org. v. Crisan, 33 Cal. 3d 766 (1983), for the proposition that the "California Supreme Court has recognized that the privilege at times extends to non-lawyers

2

1  functioning as legal advisers." Objection, 3.  However, PTI
2  overstates the holding of that case.  In <u>Crisan</u>, the California
3  Supreme Court held that a state law that provided that welfare
4  recipients could be represented at certain hearings by lay people
5  contained an "implicit guarantee of confidentiality" of
6  communications between these lay representatives and the welfare
7  claimants.  33 Cal. 3d at 770-72.  Integral to the court's
8  decision were the statutory and regulatory provisions that
9  authorized the lay representation in that context and that
10 protection of these communications was necessary for such
11 representation.  <u>Id.</u>; <u>see also</u> <u>id.</u> at 771 n.3 (recognizing that in
12 the absence of the privilege, "the only sound advice the
13 authorized representative could give was, 'Don't talk to me,'"
14 which "the Legislature could not have intended").  Although, as
15 PTI points out, the court noted the statutory lawyer-client
16 privilege "does not require that the purported lawyer actually be
17 one," this does not mean that it approved extending the statutory
18 privilege--which was not at issue in that case--to all "legal
19 advisers."  In the opinion, the court stated,

> The fact that lay representatives are not licensed or
> subject to regulation by professional rules of conduct
> does not preclude a finding of legislative intent to
> accord them a confidentiality privilege, for even the
> lawyer-client privilege set forth in Evidence Code
> section 950 et seq. does not require that the purported
> lawyer actually be one.  Section 950 defines "lawyer"
> for purposes of the privilege as meaning "a person
> authorized, <u>or reasonably believed by the client to be
> authorized</u>, to practice law in any state or nation."

<u>Id.</u> at 772 (emphasis in original).  Thus, central to the court's
discussion was that the non-lawyer was "authorized" to provide

3

representation or that the client "reasonably believed" that the non-lawyer was so authorized.

Here, although PTI generally discusses Japanese patent advisers, who it avers are "authorized to provide legal advice regarding substantive legal matters," it provides no evidence that the specific four individuals at issue here were authorized by law in Japan or elsewhere to provide legal representation to Elpida, or that Elpida had a reasonable belief that they were so authorized. Accordingly, the Special Master's holding is affirmed.

IT IS SO ORDERED.

Dated: 1/18/2013

CLAUDIA WILKEN
United States District Judge