IRELL & MANELLA LLP
Morgan Chu (70446) (mchu@irell.com)
Laura A. Seigle (171358) (lseigle@irell.com)
Benjamin W. Hattenbach (186455) (bhattenbach@irell.com)
Ellisen S. Turner (224842) (eturner@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Defendant and Counterclaimant
TESSERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| POWERTECH TECHNOLOGY INC., a Taiwanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TESSERA, INC., a Delaware corporation,<br><br>Defendant.<br><br>TESSERA, INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>vs.<br><br>POWERTECH TECHNOLOGY INC., a Taiwanese corporation,<br><br>Counterclaim Defendant,<br><br>MACROTECH TECHNOLOGY INC., a Taiwanese corporation,<br><br>Additional Defendant on Counterclaims | Case No. 4:11-cv-06121-CW<br><br>[REDACTED] TESSERA, INC.'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PTI'S AND MTI'S JOINT MOTION FOR SUMMARY JUDGMENT.<br><br>Date:    December 12, 2013<br>Time:    2:00 p.m.<br>Dept.:   Court Room 2, 4th Floor<br>Judge:  Hon. Claudia A. Wilken |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No. 4:11-CV-06121-CW

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................iv

TABLE OF EXHIBITS ...............................................................................................viii

NOTICE OF MOTION ..................................................................................................xv

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

BACKGROUND FACTS ................................................................................................3

    I.      The Agreement And PTI's Failure To Pay Royalties ............................................3

    II.     The 630 Investigation ..............................................................................................4

          A.     PTI Urges Tessera To Sue PTI's Competitors And PTI's Own
               Customers ..................................................................................................4

          B.     PTI Learns That Unpaid PTI-Packaged Products Have Come
               To Light In The 630 Investigation And Promises Elpida That
               It Will Pay All Royalties ...........................................................................5

    III.    After The ITC And Federal Circuit Find No Violation, PTI Shifts
          Elpida Business To MTI To Avoid Paying Royalties And Gives
          Notice Of Tessera's Alleged Breach .......................................................................6

ARGUMENT ..................................................................................................................8

    IV.    The Court Should Grant Summary Judgment That PTI Breached
          The Agreement When It Failed To Pay Royalties On Products It
          Admits Are TCC Licensed Products .......................................................................8

          A.     The Court Should Reaffirm Its Ruling That The Agreement
               Requires PTI To Pay Royalties On Products That Fit The
               Definition Of TCC Licensed Products .......................................................9

          B.     The Court Should Reject PTI's Radical New Interpretation
               Of The Agreement ...................................................................................10

               1.     PTI's new interpretation contradicts the Agreement's
                    plain language ...............................................................................10

               2.     PTI's new interpretation would lead to absurd results ..................11

               3.     PTI's prior conduct shows that it never intended its
                    new interpretation..........................................................................12

               4.     The Federal Circuit twice rejected the argument that
                    a product was unlicensed until a royalty was paid ......................13

          C.     PTI Breached By Not Paying Royalties On TCC Licensed
               Products ...................................................................................................15

- i -

**Page**

V.    The Court Should Grant Summary Judgment That PTI Breached The Agreement By Purporting To Terminate And That PTI Has No Current Right To Terminate ................................................................... 16

    A.    PTI's Termination Was Invalid Because Tessera Had No Dispute With PTI And Therefore Did Not Breach The Governing Law Provision ........................................................ 17

        1.    Tessera had no dispute with PTI when it brought the ITC action ............................................................. 17

        2.    Tessera had no dispute with PTI during the 630 Investigation ...................................................... 18

    B.    PTI's Termination Was Ineffective And A Breach Of The Agreement Because PTI Did Not Satisfy The Conditions For Termination ................................................................ 20

        1.    PTI's notice of termination was untimely and did not give a reasonable opportunity to cure ............................. 21

        2.    PTI's notice demanded an unreasonable cure ................. 24

        3.    Only a "non-breaching party" may terminate the Agreement ...................................................... 25

VI.   Tessera Is Entitled To Summary Judgment On PTI's Contract Claims Because The Alleged Breach Did Not Proximately Cause Any Legally Cognizable Damages To PTI ....................................... 25

VII.  Tessera Should Be Granted Summary Judgment On PTI's Fourth Claim For Fraud ............................................................................ 28

    A.    PTI's Fraud Claim Is Time Barred ........................................ 28

    B.    PTI Cannot Prove That It Relied To Its Detriment On The Statements ............................................................ 29

    C.    The Statement About "Somewhat" Lower Royalty Rates Is Not Actionable ................................................................ 30

VIII. The Summary Judgment Ruling In *PTI 1* Resolves PTI'S Fifth And Sixth Claims ................................................................................. 30

IX.   PTI's Motion On Tessera's Second And Fourth Counterclaims For Breach Of The Implied Covenant And Fraudulent Transfer Raises Disputed Facts .................................................................................. 31

    A.    The Jury Needs To Resolve The Disputed Factual Question Whether PTI Breached By Transferring ███████████ ███████████████████ .......................................... 31

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- ii -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW

1

**Page**

2

3    B.    PTI Violated California Fraudulent Transfer Law By
           Transferring █████████████████████████

4           █████████████████████████████ .......................................... 35

5    X.    PTI's Motion On Tessera's Sixth And Seventh Counterclaims For
           Intentional And Negligent Interference Raises Disputed Facts ......................... 36

6

7    XI.   PTI's Motion On Tessera's Fees and Costs Counterclaim Should Be
           Denied ......................................................................................................... 37

8    XII.  Whether PTI Must Pay Royalties On "Final Test" Products Is A
           Question Of Disputed Fact That Cannot Be Resolved On Summary

9          Judgment ..................................................................................................... 38

10   CONCLUSION ........................................................................................................................... 39

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- iii -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTS'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
    486 F.3d 629 (9th Cir. 2007) ................................................................................. 15

*April Enter., Inc. v. KTTV*,
    147 Cal.App.3d 805 (1983) ................................................................................... 32

*Atari Corp. v. Ernst & Whinney*,
    981 F.2d 1025 (9th Cir. 1992) ............................................................................... 37

*Auerbach v. Great Western Bank,*,
    74 Cal.App.4th 1172 (1999) ............................................................................ 26, 29

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*,
    5 Cal.4th 854 (1993) ............................................................................................. 37

*Bellingham Insurance Agency, Inc.*,
    702 F.3d 553 (9th Cir. 2012) ................................................................................ 35

*Best Buy Stores, L.P. v. Manteca Lifestyle Center, LLC*,
    859 F.Supp.2d 1138 (E.D. Cal. 2012) .................................................................. 32

*Bobby v. Bies*,
    556 U.S. 825 (2009) .............................................................................................. 19

*California Medical Ass'n. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal.App.4th 151 (2001) ................................................................................... 29

*Carma Developers, Inc. v. Marathon Development Cal., Inc.*
    2 Cal.4th 342 (1992) ........................................................................................ 32, 34

*CDF Firefighters v. Maldonado*,
    158 Cal.App.4th 1226 (2008) ............................................................................... 25

*Cedars-Sinai Med. Ctr. v. Shewry*,
    137 Cal.App.4th 964 (2006) ................................................................................. 12

*Centigram Argentina, S.A. v. Centigram Inc.*,
    60 F. Supp. 2d 1003 (N.D. Cal. 1999) ................................................................. 36

*Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*,
    544 F. Supp. 2d 609 (E.D. Mich. 2008) ......................................................... 21, 24

*Conrad v. Bank of America*,
    45 Cal.App.4th 133 (1996) ................................................................................... 30

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ............................................................................. 29

*DVD Copy Control Ass'n, Inc. v. Kaldeiscape, Inc.*,
    176 Cal.App.4th 697 (2009) ................................................................................. 39

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- iv -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

**Page**

*Employers Reins. Co. v. Superior Court,*
  161 Cal.App.4th 906 (2008)....................................................................................... 12

*Founding Members of the Newport Beach Country Club v.*
  *Newport Beach Country Club, Inc.,* 109 Cal.App.4th 944 (2003) ...................................... 9

*Gabana Gulf Dist., Ltd. v. GAP Int'l Sales, Inc.,*
  2008 WL 111223 (N.D. Cal. Jan. 9, 2008) ........................................................ 32

*Glen Holly Entm't, Inc. v. Tektronix Inc.,*
  343 F.3d 1000 (9th Cir. 2003)........................................................................ 30

*Hunt v. Phinney,*
  177 Cal.App.2d 212 (1960)............................................................................ 35

*Impeva Labs, Inc. v. Sys. Planning Corp.,*
  2012 WL 3647716 (N.D. Cal. Aug. 23, 2012) ..................................................... 36

*In re AFI Holding, Inc.,*
  525 F.3d 700 (9th Cir. 2008)......................................................................... 35

*In re Watman,*
  301 F.3d 3 (1st Cir. 2002) ............................................................................ 35

*Kohn v. Kohn,*
  95 Cal.App.2d 708 (1950)............................................................................. 34

*Kuffel v. Seaside Oil Co.,*
  11 Cal.App.3d 354 (1970)............................................................................. 20

*Lifescan, Inc. v. Shasta Tech., LLC,*
  933 F.Supp.2d 1243 (N.D. Cal. 2013) ............................................................. 14

*Mad River Lumber Sales, Inc. v. Willburn,*
  205 Cal.App.2d 321 (1962)....................................................................... 20, 21

*Maykuth v. Adolph Coors Co.,*
  690 F.2d 689 (9th Cir. 1982)..................................................................... 21, 24

*McLoughlin v. L. Bloom Sons Co.,*
  206 Cal.App.2d 848 (1962)........................................................................... 34

*Mejia v. Reed,*
  31 Cal.4th 657 (2003).................................................................................. 35

*Middleton v. Dep't of Defense,*
  185 F.3d 1374 (Fed. Cir. 1999)..................................................................... 19

*Motorola Mobility, Inc. v. Microsoft Corp.,*
  2011 WL 5834923 (N.D. Cal. Nov. 21, 2011)................................................... 17

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- V -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

**Page**

*Needham v. Candie's, Inc.*,
    2002 WL 1896892 (S.D.N.Y. Aug. 16, 2002) ................................................. 21

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................. 15

*Odimbur v. Wells Fargo Bank*,
    2012 WL 680057 (C.D. Cal. Mar. 1, 2012) ................................................. 26

*Ortiz v. Am. Servicing Co.*,
    2012 WL 2160953 (C.D. Cal. June 11, 2012).................................................. 29

*Pacific Indem. Co. v. Truck Ins. Exchange*,
    270 Cal.App.2d 700 (1969).................................................. 37

*PCCP LLC v. Endurance Am. Specialty Ins. Co.*,
    2013 WL 4384245 (N.D. Cal. Aug. 13, 2013).................................................. 12

*PTI 1* (*Powertech Technology, Inc. v. Tessera, Inc.*,
    660 F.3d 1301 (Fed. Cir. 2011).................................................. 14

*Reyes v. Wells Fargo Bank, N.A.*,
    2011 WL 30759 (N.D. Cal. Jan. 3, 2011) ................................................. 26

*Robinson v. Watts Detective Agency, Inc.*,
    685 F.2d 729 (1st Cir. 1982) ................................................. 35

*Robuck v. Dean Witter & Co.*,
    649 F.2d 641 (9th Cir. 1980).................................................. 28

*Rosenfield v. JPMorgan Chase Bank*,
    732 F.Supp.2d 952 (N.D. Cal. 2010) ................................................. 34

*Service By Medallion, Inc. v. Clorox Co.*,
    44 Cal.App.4th 1807 (1996).................................................. 29

*Sessions Payroll Mgmt., Inc. v. Noble Constr. Co, Inc.*,
    84 Cal.App.4th 671 (2000).................................................. 17

*Silicon Labs Integration, Inc. v. Melman*,
    2010 WL 890140 (N.D. Cal. March 8, 2010) ................................................. 36

*Stoumbos v. Kilimnik*,
    988 F.2d 949 (9th Cir. 1993).................................................. 35

*Sutcliffe v. Wells Fargo Bank, N.A.*,
    283 F.R.D. 533 (N.D. Cal. 2012) ................................................. 26

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
    2007 WL 3232441 (N.D. Cal Nov. 1, 2007).................................................. 15, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- vi -

**Page**

*Tessera, Inc. v. Int'l Trade Comm'n,*
    646 F.3d 1357 (Fed. Cir. 2011) .......................................................... 7, 12, 14, 30

*U.S. v. Masonite,*
    316 U.S. 265 (1942) ........................................................................... 14

*Vaillette v. Fireman's Fund Ins. Co.,*
    18 Cal.App.4th 680 (1993) ................................................................. 39

*Wehlage v. Empire Healthcare Inc.,*
    821 F.Supp.2d 1122 (N.D. Cal. 2011) ............................................... 34

*Wright v. Coberly-West Co.,*
    250 Cal.App.2d 31 (1967) .................................................................. 11

*Zalkind v. Ceradyne, Inc.,*
    194 Cal.App.4th 1010 (2011) ............................................................. 37

**Statutes**

Cal. Civ. Code § 1638 ................................................................................ 11

Cal. Civ. Code § 3358 ................................................................................ 27

Cal. Civ. Code § 3439 ................................................................................ 35

Cal. Civ. Code § 655 .................................................................................. 35

Cal. Civ. Proc. Code § 338 ........................................................................ 28

**Other Authorities**

California Rule of Court 8.1115 .................................................................. 11

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

**TABLE OF EXHIBITS**

The exhibits listed below are attached to the Declaration of Jad A. Mills.  Throughout this memorandum, all references to the "Guy Decl." refer to the October 15, 2013 Declaration of G. Hopkins Guy, III, filed in support of Powertech Technology Inc. ("PTI")'s and Macrotech Technology Inc. ("MTI")'s Joint Motion for Summary Judgment.  All references to the "Agreement" refer to the license agreement executed by PTI and Tessera, Inc. ("Tessera") on October 20, 2003.  All references to "Elpida" refer to Elpida Memory, Inc.  All references to the "630 Investigation" refer to International Trade Commission ("ITC") Investigation No. 337-TA-630.  All references to *PTI 1* refer to *Powertech Technology Inc. v. Tessera, Inc.*, Case No. 4:10-CV-00945-CW in the Northern District of California.  Unless otherwise noted, all emphases have been added to and citations have been omitted from quotations.

| Exhibit | Description |
|---------|-------------|
| A | The parties' Agreement (TPTI-II00084549-576) |
| B | Excerpts from the deposition transcript of D.K. Tsai, dated April 24, 2013 |
| C | Excerpts from the deposition transcript of C.C. Liao, dated June 4, 2012 |
| D | Excerpts from the deposition transcript of P.C. Lee, dated April 17, 2013 |
| E | Excerpts from the deposition transcript of P.C. Lee, dated July 11, 2012 |
| F | Excerpts from the deposition transcript of C.C. Liao, dated June 5, 2012 |
| G | January 3, 2008 email from Linda Lin to P.C. Lee (PTI2_00048355) |
| H | January 17, 2006 email from Linda Lin to P.C. Lee (PTI2_00010781-782) |
| I | Excerpts from the deposition transcript of P.C. Lee, dated April 16, 2013 |
| J | July 26, 2007 email from D.K. Tsai to Brian Marcucci (TPTI-II00014116-120) |
| K | Excerpts from the deposition transcript of Kevin Lin, dated May 9, 2013 |
| L | November 14, 2007 email from Brian Marcucci to David Djavaherian (TPTI-II00112669-670) |
| M | January 29, 2007 email from C.C. Liao to Phu Le (PTI2_00037567-569) |
| N | February 11, 2008 email from D.K. Tsai to Bruce McWilliams (TPTI-II00014540-544) |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- viii -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PTI'S AND MITS MOTION FOR SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

| Exhibit | Description |
|---------|-------------|
| O | April 20, 2007 email from P.C. Lee to C.C. Liao (PTI2_00123587), and certified translation |
| P | Declaration of Brian Marcucci, dated August 9, 2012 |
| Q | Excerpts from the 630 Investigation complaint, dated December 7, 2007 (TPTI-II00028914-9023) |
| R | Excerpts from Dr. William O. Kerr's Direct Witness Statement in the 630 Investigation, dated September 17, 2008 (TPTI-II00203985-4056) |
| S | Excerpts from Tessera, Inc.'s Proposed Findings of Fact in the 630 Investigation, dated September 17, 2008 (TPTI-II00103656-4484) |
| T | January 2, 2008 email from C.C. Liao to Seiji Nakashima with attached Indemnification Letter (PTI2_00112894-897) |
| U | December 28, 2007 letter from Seiji Nakashima to PTI ( PTI2_00112892-893) |
| V | September 22, 2011 email from Jenny Chua to C.C. Liao (PTI_PRIV2_00010060-063) |
| W | Excerpts from the February 23, 2012 transcript of the Court's Proceedings |
| X | April 7, 2010 email from D.K. Tsai to C.C. Liao (PTI2_00002925-935) |
| Z | June 24, 2008 letter from C.C. Liao to Tomoko Goto (PTI_PRIV2_00000095-112) |
| AA | July 3, 2008 email from C.C. Liao to Brian Marcucci (TPTI-II00015004) |
| AB | Excerpts from the August 15, 2008 First Supplement to the Expert Report of Mr. Emmett J. Murtha in the 630 Investigation (TPTI-II00116874-7022) |
| AC | December 5, 2008 email from Tonwey Cheng to C.C. Liao (PTI_PRIV2_00000207-208) |
| AD | February 6, 2009 email from Li Lian to P.C. Lee (PTI_PRIV2_00001896-897) |
| AE | October 10, 2008 email from Seiji Nakashima to C.C. Liao (PTI2_CI_00003) |
| AF | October 10, 2008 email from Seiji Nakashima to C.C. Liao (PTI_PRIV2_00003276) |
| AG | June 30, 2008 email from P.C. Lee to Alex Chan (PTI2_00007413) |
| AI | November 5, 2008 email from P.C. Lee to Xavier Pucel (PTI2_00007454) |
| AJ | August 26, 2009 Memorandum of Understanding (PTI_PRIV2_00008053-057) |
| AK | May 27, 2011 email from Yukio Sakamoto to D.K. Tsai (PTI_PRIV2_000081587-588) |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- ix -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

| Exhibit | Description |
|---------|-------------|
| AL | July 15, 2011 email from Soeda Masakazu to Scott C. and David F. (PTI_PRIV2_000081587-588) |
| AM | October 20, 2011 email from Soeda Masakazu to Tony Chao (PTI_PRIV2_00010120-122) |
| AQ | August 30, 2011 email from Sonoko Kawasumi to Kevin Lin with attachment (PTI_PRIV2_00008098-100) |
| AR | Email string including a September 12, 2011 email from Yasushi Takahashi to C.C. Liao (PTI2_CI_00054) |
| AS | Email string including a June 16, 2011 email from C.C. Liao to D.K. Tsai (PTI2_00237845) |
| AT | Email string including an August 31, 2011 email from Phu Le to Shunichi Kishimoto (PTI2_00113826-827) |
| AV | Excerpts from the deposition transcript of Charles Donohoe, dated October 4, 2013. |
| AZ | Excerpts from the deposition transcript of Brian Marcucci, dated May 18, 2012. |
| BA | Excerpts from Respondents' Response to Complainant's Petition for Review on Initial Determination in the 630 Investigation, dated October 13, 2009 (TPTI-II00046581-6682) |
| BB | Excerpts from the 2005 Marketing Agreement between Tessera and PTI (TPTI-II00046581-682) |
| BE | Excerpts from PTI's Confidential Responses to Tessera's First Set of Interrogatories, dated March 5, 2012 |
| BF | Excerpts from PTI's Answer to Tessera's Amended Counterclaims, Affirmative Defenses and Notice of Grounds for Motion to Dismiss, dated March 20, 2013. |
| BG | Excerpts from a PTI spreadsheet showing PTI shipping data, paid royalties, and unpaid royalties (PTI2_00418995) |
| BH | October 31, 2007 email from P.C. Lee to Alex Chan with attached PTI Royalty Report for Q3, 2007 (PTI2_00007873-874) |
| BI | Excerpts from Appendices in support of Tessera's Brief on the Issues of Remedy, the Public Interest, and Bonding in the 630 Investigation, dated November 13, 2009 (TPTI-II00090226-345) |
| BJ | Excerpts from Complainant's Second Corrected Post-Hearing Brief in the 630 Investigation, dated November 6, 2008 (TPTI-II00100425-576) |
| BK | Excerpts from Brian Marcucci's Deposition transcript, dated May 17, 2012 |
| BL | Excerpts from Brian Marcucci's Direct Witness Statement in the 630 Investigation, dated September 2, 2008 (TPTI-II00090203-215). |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- X -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PTI'S AND MITS MOTION FOR SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

| Exhibit | Description |
|---------|-------------|
| BM | Excerpts from a 630 Investigation Hearing Transcript, dated September 25, 2008 (TPTI-II00231867-2248) |
| BQ | Excerpts from Charles Schill's Deposition Transcript, dated August 29, 2013 |
| BR | Excerpts from Complainant's Memorandum in Support of its Motion to Compel Production of Documents Withheld Based on License Defenses in the 630 Investigation, dated July 7, 2008 (TPTI-II00189350-9904) |
| BS | Excerpts from Mark Reiter's Deposition Transcript, dated September 4, 2013 |
| BT | PTI's Answer to Tessera's Second Amended Counterclaims, Affirmative Defenses and Notice of Grounds for Motion to Dismiss or Strike, dated March 28, 2013 |
| BU | Excerpts from James Malackowski's Expert Report, dated July 1, 2013 |
| BV | Excerpts from D.K. Tsai's Declaration in Support of PTI's Opposition to Tessera's Motion to Dismiss in *PTI 1*, dated May 13, 2010 |
| BX | Summary of Selected Public Documents from the 630 Investigation |
| BX-1 | Excerpts from Respondent's Opposition to Complainant's Motion to Set an April 11, 2008 Deadline for Producing all Documents Responsive to Currently Outstanding Requests for Production in the 630 Investigation, dated March 26, 2008 (TPTI-II00031907-1953) |
| BX-2 | Excerpts from Elpida's Statement with Respect to Complainant's Motion to Compel Production of Documents Withheld Based on License Defenses in the 630 Investigation, dated July 17, 2008 (TPTI-II00035615-5623) |
| BX-3 | Excerpts from Seyfarth Respondents' Statement with Respect to Complainant's Motion to Compel Production of Documents withheld based on License Defenses in the 630 Investigation, dated July 17, 2008 (TPTI-II00035684-5689) |
| BX-4 | Excerpts from Respondents' Opposition to Complainant's Omnibus Motion to Compel in the 630 Investigation, dated July 21, 2008 (TPTI-II00035824-838) |
| BX-5 | Excerpts from the Respondents' Motion to Terminate Investigation based on Stipulation and Consent Order in the 630 Investigation, dated July 31, 2008 (TPTI-II000361556-6168) |
| BX-6 | Excerpts from the Respondents' Motion For Leave to File Reply and Reply In Support of Motion to Terminate Based on Stipulation and Consent Order in the 630 Investigation, dated August 22, 2008 (TPTI-II00038635-654) |
| BX-7 | Excerpts from the Respondents' Corrected Post Hearing Brief in the 630 Investigation, dated November 24, 2008 (TPTII00044651-803) |
| BX-8 | Excerpts from the Initial Determination on violation of Section 337 and Recommended Determination on Remedy and Bond in the 630 Investigation, dated September 25, 2009 (TPTI-II00045958-46142) |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- xi -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

| Exhibit | Description |
|---------|-------------|
| BX-9 | Excerpts from Tessera's Corrected Brief on the Issues of Remedy, The Public Interest, and Bonding in the 630 Investigation, dated November 16, 2009 (TPTI-II00046752-858) |
| BY | Excerpts from the deposition transcript of C.C. Liao, dated April 25, 2013 |
| BZ | Excerpts from PTI's Confidential Supplemental Response to Tessera's First Set of Interrogatories, dated August 27, 2012 |
| CA | Excerpts from PTI's Response to Tessera's First Set of Contention Interrogatories, dated March 4, 2013 |
| CB | Excerpts from PTI's Supplemental Response to Tessera's First Set of Contention Interrogatories, dated April 4, 2013 |
| CC | Excerpts from the deposition transcript of PC Lee, dated July 12, 2012 |
| CD | Excerpts from the deposition transcript of D.K. Tsai, dated May 30, 2012 |
| CE | Excerpts from the deposition transcript of D.K. Tsai, dated April 23, 2013 |
| CF | Excerpts from the deposition transcript of C.C. Liao, dated April 26, 2013 |
| CG | Excerpts from the deposition transcript of Craig Mitchell, dated May 15, 2013 |
| CH | DRAM Manufacturing Agreement between Elpida and PTI, dated September 14, 2004 (PTI2_00112873-2890) |
| CJ | June 1, 2011 email from C.C. Liao to Chen, Cheng and Chao (PT12_00030713) |
| CK | Email string including November 9, 2011 from M. Chiang to M. Kobari (PT12_00422290-PT12_00422292) |
| CL | PTI Organization Chart, dated August 31, 2010 (PTI2_00185253-263) |
| CM | PTI spreadsheet of MTI employees and their previous employment dates at PTI (PTI2_00421192-213) |
| CN | Confirmation of MTI's Personnel System spreadsheet and certified translation (PTI2 00179866) |
| CO | May 26, 2010 email from Shelly to Xiujiwen and certified translation (PTI2_00181163) |
| CP | PTI spreadsheet showing assets transferred from PTI to MTI (PTI2_00424165) |
| CQ | August 4, 2011 email C.C. Liao to Tony Chao (PTI2_00201049-1053) |
| CR | May 6, 2011 email from C.C. Liao to Prima Yeh (PTI_PRIV2_00001637-1643) |
| CS | MTI Board of Director Meeting minutes, dated September 2, 2011, and certified translation (PTI2_00112864) |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- xii -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

| Exhibit | Description |
|---------|-------------|
| CT | August 18, 2011 email sent from Alice Lin to P.C. Lee and certified translation (PTI2_ 00298726) |
| CU | PTI ADM & Finance Highlights, dated May 11, 2011 (PTI2_ 00201135-1143) |
| CV | August 5, 2011 email from Alice Lin  to Shin Yu (PTI2_ 00178537-8543) |
| CW | Declaration of Jeffrey H. Kinrich, dated November 1, 2013 |
| CX | September 1, 2011 email from Jonny Chu to Rita Chou (PTI2_ 00194094-4098) |
| CY | Spreadsheet of MTI's List of Board Directors, Supervisors and Managers, (PTI2_00421867) |
| CZ | PTI's  Financial Statements for the Six Months ended June 30, 2011 and 2010 and independent Auditor's Report (PTI2_ 00237558-7606) |
| DA | Image of an MTI/PTI Coffee Cup (PTI2_00428761) |
| DB | Spreadsheet of PTI List of Board Directors, Supervisors, and Managers (PTI2_00424181) |
| DC | July 14, 2008 email from P.C. Lee to David Sun et al (PTI-PRIV2_00001864) |
| DD | Excerpts from the deposition transcript of Phu Le, dated October 11, 2012 |
| DE | Excerpts from the minutes of a PTI Executive Meeting (PTI2_00201033) |
| DG | Email string including a September 10, 2010 email from Rhoda Ku to Boris Hsieh (PTI2_00174009-010) |
| DH | Excerpts from the deposition transcript of Kota Takemura, dated May 10, 2013 |
| DK | Excerpts from the deposition transcript of Phu Le, dated April 24, 2013 |
| DL | Excerpts from the deposition transcript of Johnson Tai, dated May 8, 2013 |
| DM | Excerpts from the deposition transcript of John Cole Bravman, dated September 24, 2013 |
| DN | Excerpts from the deposition transcript of Harry J. Gwinnell, dated October 1, 2013 |
| DO | United States Patent No. 6,002,168 |
| DP | United States Patent No. 5,679,977 |
| DQ | United States Patent No. 6,460,245 |
| DR | United States Patent No. 5,524,545 |
| DS | United States Patent No. 5,966,587 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- xiii -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW

1

| Exhibit | Description |
|---------|-------------|
| DU | March 2, 2010 email from Brian Marcucci to Justin Wang (TPTI-II00025243) |
| DV | Excerpts from the deposition transcript of Xavier Pucel, dated April 18, 2013 |
| DW | Excerpts from the deposition transcript of Craig Mitchell, dated May 16, 2013 |
| DX | Summary of PTI statements contrary to its current contract interpretation |
| DX-1 | Email string including a May 19, 2006 email from C.C. Liao to Bruce McWilliams (TPTI-II00024710-711) |
| DY | Excerpts from the deposition transcript of Linda Lin, dated May 16, 2013 |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- xiv -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 12, 2013, or as soon thereafter as counsel may be heard before the Honorable Claudia Wilken in Courtroom 2 on the 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Defendant and Counterclaimant Tessera, Inc. ("Tessera") will and hereby does move pursuant to Federal Rule of Civil Procedure 56 for summary judgment that: (a) the parties' Agreement requires Plaintiff Powertech Technology Inc. ("PTI") to pay royalties on all TCC Licensed Products that PTI sells, transfers, or uses; (b) PTI breached the Agreement by not paying the required royalties; (c) Tessera did not breach the Agreement's Governing Law provision; and (d) PTI breached the Agreement by failing to satisfy the Agreement's notice and cure conditions before purporting to terminate the Agreement on June 30, 2012.

Tessera also seeks summary judgment in Tessera's favor on: (a) PTI's First Claim for declaratory relief (because PTI's termination of the Agreement was legally ineffective and it has no current right to terminate);(b) PTI's Second Claim for breach of contract and Third Claim for breach of the implied covenant of good faith and fair dealing (because Tessera did not breach the Governing Law provision, PTI failed to satisfy the contractual notice and cure condition to suing for breach of the Agreement, and PTI cannot prove it suffered damages proximately caused by the alleged breach); (c) PTI's Fourth Claim for fraud (because the allegedly false statements were true, the claim is time-barred, and PTI cannot prove that it relied to its detriment on the purportedly false statements); (d) PTI's Fifth and Sixth Claims for declaratory relief on patent misuse and contract interpretation (because the Court decided the issues in Tessera's favor in *PTI 1*); and (e) Tessera's Ninth Counterclaim that PTI has no current right to terminate and that the Agreement remains in effect (because Tessera did not breach and PTI's termination of the Agreement was legally ineffective).

Summary judgment is appropriate because there is no genuine dispute of material fact as to Tessera's Ninth Count, as to whether the Agreement requires PTI to pay royalties on all TCC Licensed Products, as to whether PTI breached the contract by failing to pay royalties on TCC Licensed Products and by failing to satisfy the Agreement's notice and cure conditions, and as to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- XV -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

1    whether Tessera did not breach the Agreement's Governing Law provision.  In addition, all

2    undisputed facts and all reasonable inferences taken in favor of PTI establish that PTI cannot

3    succeed as to its First, Second, Third, Fourth, Fifth, and Sixth Claims For Relief as a matter of

4    law.

5         Tessera's Motion is based on this Notice of Motion, the accompanying Memorandum of

6    Points and Authorities, the Declaration of Brian Marcucci, the Declaration of Jeffrey Kinrich, the

7    Declaration of Jad A. Mills, all exhibits and other papers attached thereto, all exhibits and other

8    papers on file in this action and any related actions, including motions, papers, exhibits and rulings

9    filed in *Powertech Technology Inc. v. Tessera, Inc.*, Case No. 4:10-cv-00945-CW, such other

10   evidence and arguments as may be presented at or before the hearing on this Motion, and all other

11   matters of which the Court may take judicial notice.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- xvi -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MIT'S MOTION FOR
SUMMARY JUDGMENT     Case No 4:11-CV-06121-CW

## MEMORANDUM OF POINTS AND AUTHORITIES

This is a litigation about litigation, with PTI using the litigation process as a pretext for withholding royalties it promised to pay. Rather than follow through with its promise to pay royalties to Tessera, PTI has regrettably followed through with its promise ████████ ████████████████████████████████████████████████████████████ ████████ Ex. X. PTI's president made that threat in an email seeking to ████████ ████████████████ just as PTI launched multiple lawsuits against Tessera in this Court.

Consistent with PTI's promise ████████████████, this case has grown to involve many facts about many issues. But the material issues are few and should be resolved now based on the plain language of the parties' Agreement and a handful of undisputed facts. Tessera seeks summary judgment on these few issues, which will serve to narrow the remaining matters to be decided by the jury.

First, the Court should reaffirm its decision in *PTI 1* and rule that the Agreement imposes an ***obligation*** on PTI to pay royalties on products that fit the objective, technical criteria in the Agreement's "TCC Licensed Product" definition. A judgment that PTI breached that obligation necessarily follows because PTI admittedly did not pay royalties on products that meet that definition. In so ruling, the Court should reject PTI's novel contention that the Agreement gives it an ***option*** to decide unilaterally, without informing Tessera, and on a unit-by-unit basis, whether PTI wants to pay a royalty. This newly minted interpretation is not merely nonsensical. It fails as a matter of law because it contradicts the Agreement's unambiguous language and would render meaningless multiple contract provisions about royalty ***obligations***. PTI's new interpretation is also contrary to its prior conduct, in this case and in *PTI 1*, where it repeatedly acknowledged, and indeed complained about the fact, that it was obligated to pay royalties to Tessera. In addition, the Federal Circuit has already twice rejected any interpretation of the Agreement that would allow PTI to unilaterally deem particular products "unlicensed" and then withhold royalties on that basis.

Second, Tessera seeks summary judgment that PTI breached when it improperly attempted to terminate the Agreement on June 30, 2012, based on Tessera's pursuit of the 630 Investigation, which PTI had begged Tessera to file. PTI claims that Tessera breached the Governing Law

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 1 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

provision, which addresses how to resolve disputes between the parties, how to afford notice and an opportunity for cure, and venues for unresolved disputes between the parties. But Tessera did not know of any dispute with PTI when it filed the 630 Investigation because, by all indications and PTI's own representations, PTI was a licensee in good standing, and Tessera explicitly excluded properly licensed products from all remedies sought in the 630 Investigation. Even later, after PTI made "catch-up" royalty payments, Tessera considered PTI a licensee providing licensed products to its customers and did not seek to exclude those products from importation into the U.S. Therefore, there was no dispute about which to give PTI notice or ask PTI to cure.

PTI's attempt to terminate was also legally deficient and ineffective for the independent reason that PTI did not give Tessera adequate and timely notice of any alleged breach or any opportunity to cure. PTI knew the facts upon which it now bases its breach claim more than *three years* before PTI finally gave Tessera notice of the alleged breach in October 2011, long after any cure was possible. Indeed, the undisputed facts demonstrate that PTI intentionally waited until the Federal Circuit's September 2011 final decision in the 630 Investigation before giving notice. PTI's dilatory assertions fail to satisfy the Agreement's notice and cure requirement, rendering PTI's purported termination legally ineffective.

Third, Tessera seeks summary judgment on PTI's breach of contract, implied covenant and fraud claims because PTI cannot prove that it suffered any legally cognizable damages that arise from any alleged breach or any allegedly false statements. Nothing Tessera did or said put PTI in a worse position compared to the position PTI would have been in had Tessera said or done nothing. Either way, the Agreement required PTI to pay royalties. Further, PTI bases its damages claims on the assertion that if it had known of Tessera's conduct in the 630 Investigation (which in fact it did know), PTI would have terminated the Agreement in September 2010. But PTI's own evidence reveals that PTI promised Elpida it would pay royalties until the 630 Investigation ended and until Elpida gave permission to stop, which did not occur until September 2011.

Fourth, Tessera seeks summary judgment on PTI's fifth and sixth claims, which assert patent misuse and seek to limit PTI's royalty obligations to products that infringe a licensed patent. The Court already decided both issues in Tessera's favor in *PTI 1*.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 2 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

1      The Court should also deny PTI's summary judgment motion.  Rejecting PTI's unfounded

2  royalty option interpretation necessarily nullifies most of PTI's motion.  PTI's remaining

3  arguments depend on material facts genuinely in dispute, as detailed below.

**BACKGROUND FACTS**

**I.      The Agreement And PTI's Failure To Pay Royalties**

6      Tessera and PTI signed the Agreement in October 2003.  Ex. A.  The Agreement's license

7  grant includes over 150 Tessera patents, patent applications, and other valuable rights.  *Id.* at ¶ II.

8  In exchange, PTI must make regular royalty payments to Tessera.  *Id.* at ¶ III.B.  As the Court

9  ruled in *PTI 1*, the Agreement uses objective, technical criteria to define the products on which

10  PTI must pay royalties, which it calls "TCC Licensed Products."  *Id.* at ¶ I.A.

11      Starting in 2005, ██████████████████████ withheld royalties it knew it owed on TCC

12  Licensed Products.  For example, PTI's chairman, D.K. Tsai, acknowledged ████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ██████████████████████ Ex. B at 777:16-778:5; *see also* Ex. C at 166:3-9.  Likewise, P.C.

16  Lee, the head of PTI's finance department in charge of royalties, testified that ████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████ Ex. D at 532:14-23;

19  Ex. E at 171:1-23.  Nevertheless, PTI withheld royalties on those products because ██████

20  ████████████████████████████ Ex. F at 238:22-239:19, 243:7-14.

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████████

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                              - 3 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW

## II.     The 630 Investigation

### A.     PTI Urges Tessera To Sue PTI's Competitors And PTI's Own Customers

For months before the 630 Investigation began in December 2007, PTI urged Tessera to sue its unlicensed competitors and some of PTI's own customers in the ITC because PTI felt that they had an unfair pricing advantage in the marketplace.  For example, in June 2007, PTI asked Tessera ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. J at 5.  The following month, PTI asked whether Tessera had ██████████████████████████████ *Id.* at 1.  In 2007, PSC, ProMos and Elpida were all PTI customers.  Ex. K at 136:25-137:10.  PTI also asked Tessera █ ███████████████████████████████████████████████████████████████████████ Ex. J at 1.  In November 2007, PTI ████████████████████████████████████████ ███████████████████████████████████████████████████████.  Ex. L.

While PTI urged Tessera to take action against PTI's own customers and competitors, PTI emphasized that it was paying all of the royalties due and was the only subcontractor that Tessera could trust.  Ex. M ████████████████████████);  Ex. N ███████████████████████████████████████████████████████████████████████ ██████████████).  But PTI did not tell Tessera that since 2005 it had been withholding royalties, including for Elpida products.  Ex. F at 255:18-21.

When PTI urged Tessera to initiate the 630 Investigation, Tessera conducted research.  Tessera compared royalty reports received from licensees with data from industry reports about DRAM products sold by Elpida and others.  Ex. P, ¶¶ 3, 6.  Tessera calculated that it had not received royalties on about 40% of Elpida's products.  *Id.* at ¶ 6.  But PTI had assured Tessera that it paid all royalties due.  Tessera therefore concluded that Elpida had to be using unlicensed subcontractors for that 40% of its products.  *Id.* at ¶ 7.  PTI's demand that Tessera ███████████████████ ███████████████████████████████████ coupled with PTI's ██████████████ ██████████████████████████████, and PTI's assertion that ████████████████████ ██████████████████ all buttressed Tessera's good-faith belief that Elpida was selling unlicensed products that PTI did not package.  *Id.* at ¶¶ 5, 7; Ex. J at 1; Ex. L.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                                   - 4 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

As a result, in December 2007, Tessera brought the 630 Investigation against PSC, ProMos, Nanya, and Elpida, along with fourteen other respondents.  Ex. Q.  None of them had licenses with Tessera and all appeared to be using unlicensed subcontractors for their products.  Tessera was explicit in its complaint and throughout the 630 Investigation that it did ***not*** seek any remedy against "properly licensed" products.  *Id.* at ¶ 9; *see, e.g.,* Ex. R at 19 (Q.83); Ex. S at 704.  Tessera did not include PTI as a respondent, believing PTI to be a licensee in good standing whose products would not be harmed by any ITC remedy.  Ex. P at ¶ 7.

**B.    PTI Learns That Unpaid PTI-Packaged Products Have Come To Light In The 630 Investigation And Promises Elpida That It Will Pay All Royalties**

PTI promptly learned that the 630 Investigation had uncovered the products that PTI had packaged for Elpida while secretly withholding royalties.  ███████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████   Thus, PTI knew by December 2007 that products it had packaged were involved in the 630 Investigation.  That, combined with PTI's knowledge that it had ███████ withheld royalties on Elpida products (which made the products appear to be from unlicensed sources), put PTI on notice that products it packaged were at issue.

███████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

██  Tessera knew nothing about ████████████████████, nor that PTI had been withholding royalties.

███████████████████████████████

████████████████████████████████

███████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 5 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW



1

2

3

4   Tessera had no knowledge of any of this until discovery in the present case.

5

6

7

8

9       In June 2008, six months after the investigation was filed and two months after PTI and

10   Elpida entered their common interest agreement, PTI suddenly made the first of two belated

11   payments for the royalties it had ██████ been withholding since 2005.  Ex. AG.  In total, PTI paid

12   about ████████ in withheld royalties, telling Tessera that it had found the royalties by a ████

13   ████  Exs. AG, AI.  In fact, ████████████████████████

14   ████████████████████████████████.  Ex. F at 249:13-250:12.

15

16

17

18

19

20

21

22

23

24   ██  Again, Tessera knew nothing of these events until discovery in the present litigation.

25   **III.    After The ITC And Federal Circuit Find No Violation, PTI Shifts Elpida Business To**

26   **MTI To Avoid Paying Royalties And Gives Notice Of Tessera's Alleged Breach**

27       In December 2009, the ITC issued its final determination in the 630 Investigation.  It found

28   no violation because certain products did not infringe and because, as to other products, Elpida

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                        - 6 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1  purchased only from Tessera licensees and therefore was protected by the patent exhaustion

2  doctrine.  On May 23, 2011, the Federal Circuit affirmed.  *Tessera, Inc. v. Int'l Trade Comm'n*,

3  646 F.3d 1357 (Fed. Cir. 2011).  Four days later, 

4

5

6

7

8

9      Over the next several months,

10

11

12

13

14

15

16      On August 30, 2011, the Federal Circuit denied Tessera's petition for rehearing *en banc*.

17  This decision by the Federal Circuit set in motion a chain of events that led to the present

18  litigation.

19

20

21

22

23

24      On October 6, 2011, PTI sent a letter to Tessera asserting, for the first time, that Tessera's

25  conduct in initiating and maintaining the 630 Investigation against Elpida breached the

26  Agreement.  Guy Decl., Ex. 80.  This was more than three years after

27                                                                    and more than two years

28  after

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 7 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW

1    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮   The October 6, 2011 letter stated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.* at 4.  Two months after sending the letter,

4    PTI filed the present lawsuit.  PTI then purported to terminate the Agreement as of June 30, 2012.

5                                        **ARGUMENT**

6    **IV.    The Court Should Grant Summary Judgment That PTI Breached The Agreement
7           When It Failed To Pay Royalties On Products It Admits Are TCC Licensed Products**

8          Tessera's first counterclaim alleges that PTI breached the Agreement by failing to pay all

9    royalties owed on TCC Licensed Products.  After spending years contending unsuccessfully that

10   its royalty obligation turned on whether a product infringes a Tessera patent, PTI has switched to

11   an entirely new argument for why it does not need to pay royalties on TCC Licensed Products.

12         PTI's new theory, advanced for the first time in March 2013, more than three years after

13   suing Tessera in *PTI 1* and 15 months after launching this case, is that the Agreement allows PTI

14   to decide – unilaterally and without notification to Tessera – which products to license and pay

15   royalties on, and which products will receive no license rendering a royalty payment unnecessary.

16   PTI Mot. at 17:3-4.  According to PTI, the Agreement all along gave PTI an ▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮   on a ▮▮▮▮▮▮▮▮▮▮▮▮   regardless of whether the product fits the

18   TCC Licensed Product definition.  *Id.* at 7:21-22, 16:23-17:2.  In other words, ▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   Ex. AV at147:1-

22   148:25.  PTI maintains, moreover, that the Agreement permits PTI ▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.* at 159:20-23, 281:25-282:16.

25         PTI's new argument is contrary to the Agreement's plain language, which obligates PTI to

26   pay royalties on TCC Licensed Products whether PTI wants to or not.  And because PTI admits

27   that it ▮▮▮▮▮▮▮▮   withheld royalties on millions of TCC Licensed Products, Tessera seeks a two-

28   part summary judgment ruling: (a) that the Agreement requires PTI to pay royalties on all TCC

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                         - 8 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

1   Licensed Products that PTI sells, transfers, or uses,[1] and (b) that PTI breached the Agreement by

2   not paying the required royalties.

3       **A.**    **The Court Should Reaffirm Its Ruling That The Agreement Requires PTI To Pay Royalties On Products That Fit The Definition Of TCC Licensed Products**

4

5       This Court already ruled on summary judgment in *PTI 1* that the Agreement

6   unambiguously obligates PTI to pay royalties on products that fit the technical definition of TCC

7   Licensed Products.  Tessera asks the Court to reaffirm that ruling here.

8       In rejecting PTI's infringement-based interpretation, the Court held that "the express

9   language of the contract ***unambiguously conditions PTI's payment of royalties on whether its***

10   ***products fall into the definition of 'TCC Licensed Product***.'"  D.I. No. 233 at 32:10-14.  The

11   Court also held that "the relevant provision bases the ***royalty obligation*** on the number of 'Billable

12   Pins' for 'TCC Licensed Products' that PTI has sold and provides specific, technical definitions for

13   those terms that do not depend on patent coverage or infringement," and that "royalties ***are due***

14   per Billable Pin in TCC Licensed Products."  *Id.* at 21:1-5, 24:23-24.  PTI's new interpretation

15   seeks to upend this Court's ruling by turning a "royalty obligation" into a royalty ***option***.

16       PTI has no justification for asking the Court to overturn its *PTI 1* holding.  At the time of

17   the *PTI 1* summary judgment motion in 2012, PTI was in possession of all pertinent facts about

18   the parties' intent in October 2003 concerning the scope and meaning of PTI's royalty obligations.

19   It is the objective intent expressed back in 2003, when the parties entered the Agreement, that

20   controls the interpretation.  *Founding Members of the Newport Beach Country Club v. Newport*

21   *Beach Country Club, Inc.*, 109 Cal.App.4th 944, 956 (2003).  There is no question that PTI

22   fashioned its new royalty option argument nearly a decade later.  PTI never once suggested the

23   new argument in *PTI 1* or during the first year and a half of this case.  PTI's argument does not

24   reflect the parties' intent when they signed the Agreement in 2003.

25       There is no reason why the same contract should be given a different meaning here than in

26   *PTI 1.*  The Court should give effect in this case to its *PTI 1* ruling and summarily reaffirm that

27   PTI is contractually obligated to pay royalties on any products it sells, uses, or transfers that fall

28   ---

[1] The one exception is Batch Technology.  Ex. A at ¶ II.B.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 9 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW

1   within the definition of TCC Licensed Products.

2       **B.**    **The Court Should Reject PTI's Radical New Interpretation Of The Agreement**

3       In the event the Court were to reexamine the issue of PTI's royalty obligations, numerous

4   other grounds exist on which the Court should reject PTI's new interpretation as a matter of law.

5         **1.**    **PTI's new interpretation contradicts the Agreement's plain language**

6       First, PTI's new interpretation contradicts the Agreement's plain language, violating the

7   precept that "the language of a contract is to govern its interpretation, if the language is clear and

8   explicit."  Cal. Civ. Code § 1638.

9       The Agreement's License Grant gives PTI a license "to Tessera Patents to assemble ICs

10  into TCC Licensed Products and use or sell such TCC Licensed Products."  Ex A at ¶ II.A.  The

11  Royalty provision then states that PTI "***shall*** pay running royalties for the license ***granted*** in

12  Paragraph II.A. four times annually . . . for TCC Licensed Products sold by Licensee hereunder,

13  whether sold, transferred or used internally."  *Id.* at ¶ III.B.  Together, these clauses establish that

14  Tessera had "granted" a license to TCC Licensed Products and that PTI was required ("shall") to

15  pay royalties each quarter on those products.  PTI's interpretation would require re-writing the

16  Royalty provision almost entirely to state that PTI "***may, at any time and on a product-by-product***

17  ***basis, choose*** to pay running royalties ***and Tessera will then grant those products a license***."

18      PTI premises its option interpretation on one sentence taken out of context from Paragraph

19  II.D. – "Licensee is licensed only for TCC Licensed Products for which it pays royalties

20  hereunder."  PTI Mot. at 16:23-17:2.  But Paragraph II.D. merely provides a procedure for the

21  parties to negotiate whether a product fits the technical parameters of TCC Licensed Products, and

22  allows Tessera to sue if negotiations fail.  Nothing in the paragraph suggests that PTI can decide

23  unilaterally not to pay royalties on products fitting the definition of TCC Licensed Products or that

24  such products can be unilaterally designated "beyond the scope of the agreement."  *Id.* at 16:15-17.

25      In addition, PTI's interpretation violates the fundamental rule that a contract must be read

26  as a whole.  Cal. Civ. Code § 1641.  For example:

27  •  The Term and Termination provision gives a non-breaching party the right to terminate "due to

28     the other party's ***breach*** . . . such as failure to perform its duties, obligations, or responsibilities

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 10 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

herein (including, without limitation, *failure to pay royalties and provide reports as set forth herein*)." Ex. A at ¶ VIII.B.  But if PTI can choose if and when to pay royalties, there can be no " ███████████████ making this language superfluous.[2]  PTI Mot. at 22:22-23:4.

- Paragraph V.A. states that PTI's "royalties shall be calculated and paid *in full in quarter annual payment periods*." Ex A.  If PTI can choose to pay royalties, then this language is extraneous because whatever amount PTI decides to pay is payment "in full."  And if PTI can choose when to pay (even years later), then quarterly due dates are essentially meaningless.

- The Compliance Audit provision states that Tessera can audit if PTI "is not paying royalties on certain devices for which a royalty is due hereunder," and can request information "to make a determination whether such devices are covered hereunder." Ex. A at ¶ IX.B.  If PTI can choose if and when to pay, there is nothing for Tessera to audit and no determination to make.

- The Survival Clause states that "Licensee's *obligation* to make payments to Tessera accrued under this Agreement" survives expiration or termination.  Ex. A at ¶ VIII.F.  But under PTI's new interpretation, it has no obligation to pay any royalties and no royalties accrue.

If PTI's interpretation were to stand, numerous key provisions of the Agreement would be gutted.  For that additional reason, the law requires the rejection of PTI's interpretation.[3]

### 2.    PTI's new interpretation would lead to absurd results

Another basic rule is that courts "should avoid an interpretation which . . . would result in an absurdity." *Wright v. Coberly-West Co.*, 250 Cal.App.2d 31, 36 (1967); Cal. Civ. Code § 1638.  PTI's new interpretation would lead to results that are beyond absurd.

If PTI could elect to take a license on a product sold one minute, and the next minute opt not to license an identical product rolling off of the same assembly line, all without advising Tessera, the Agreement would be impossible to administer.  Because products have no markings

---

[2] This language, which expressly states that failure to pay royalties is a breach, refutes PTI argument that because the parties discussed an amendment stating that not paying "timely royalties" was a breach, PTI's failure to pay royalties under the un-amended contract was not a breach.  Also, to support that argument, PTI cites an unpublished California case, in violation of California Rule of Court 8.1115(a).  PTI Mot. at 23:9.

[3] If there were any doubt (there is not), California law favors construing contracts as bilateral rather than as a one-sided options.  *Patty v. Berryman*, 95 Cal.App.2d 159, 167 (1949).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                    - 11 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1  to indicate whether PTI paid a royalty on them or even that they originate from PTI (Ex. AZ at
2  209:7-13), Tessera would have no way to know which products were licensed, except through
3  continuous auditing of PTI.  And, because PTI could decide years after a sale to pay the royalty on
4  a product, Tessera could never be certain whether PTI would later opt for a license.  This would
5  make it impossible for Tessera to enforce its patents.  Under PTI's option interpretation, Tessera
6  would in effect be giving up its right to enforce its patents in exchange for nothing.

7      As PTI likes to point out, when Tessera argued in the ITC that products were not licensed
8  until the licensee paid the royalty, the Federal Circuit stated that "Tessera's arguments were
9  'hollow and unpersuasive' and produced an 'absurd result'."  PTI Mot. at 20:4-6.  The Federal
10  Circuit noted:  "That absurd result would cast a cloud of uncertainty over every sale, and every
11  product in the possession of a customer of the licensee." *Tessera*, 646 F.3d at 1370.  In fact, PTI's
12  current lead counsel in this case represented parties in the 630 Investigation and argued in the ITC
13  that Tessera's "tortured contract interpretation" led to a "perverse result." Ex. BA at 16.  PTI
14  cannot now adopt an argument that would itself cast a cloud of uncertainty over every PTI sale.

15      **3.      PTI's prior conduct shows that it never intended its new interpretation**

16      Where a contract is ambiguous, a court may consider extrinsic evidence, such as the
17  "subsequent conduct of the parties."  *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal.App.4th 964, 980
18  (2006).  But only the conduct of the parties to the contract at issue can shed light on their intent.
19  *Employers Reins. Co. v. Superior Court*, 161 Cal.App.4th 906, 921, 923 n.15 (2008).  A party's
20  dealing with a third party "does not establish a course of conduct between the parties." *PCCP*
21  *LLC v. Endurance Am. Specialty Ins. Co.*, 2013 WL 4384245, at *5 (N.D. Cal. Aug. 13, 2013).[4]

22      If the Court believes a review of extrinsic evidence is necessary, it will find that PTI's
23  conduct demonstrates that PTI never believed it had an option not to pay royalties, and that PTI
24  fashioned that argument midway through this case.  Before PTI first asserted the royalty option

25

26

27      [4] Without legal authority PTI tries to expand the rule to include Tessera's dealings with
28  third party Hynix.  PTI Mot. at 21:17-22:21.  Tessera objects to the 2005 Hynix agreement as
    irrelevant and inadmissible for interpreting the Agreement.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 12 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1    interpretation, PTI consistently demonstrated that it believed the Agreement **required** royalty

2    payments.  Ex. BF at 24:23-26.  For example:

3    •    ███████████████████████████████████████████████████████

4         ████████████████████████████████████████████████████████████

5         ███████████████████████████████████████████████████████

6         ██████████████████████████████████████████████

7         ██████████████████████████████████████████████████

8         ██████████████████████

9    •    In *PTI 1* in April 2010, PTI opposed Tessera's motion to dismiss by arguing that "PTI **always**

10        understood the license agreement to **require** royalties for products covered by Tessera's

11        patents."  D.I. No. 33 at 15:26-27.  PTI's chairman, D.K. Tsai, submitted a declaration stating

12        that "███████████████████████████████████████████████  D.I.

13        No. 37-2 at ¶ 8.  Neither PTI nor its chairman suggested that PTI had a royalty option.

14   •    ████████████████████████████████████████████████████

15        ████████████████████████████████████████████████████████████

16        █████████████████████████████████████████

17   •    PTI's October 2012 Fourth Amended Complaint, and each of its prior complaints, in this case

18        alleges:  "Under the TCC License, Tessera **required PTI to pay a running royalty** . . . ."  D.I.

19        No. 176 at ¶ 22.  PTI's March 5, 2012 interrogatory responses state that ████████████

20        ████████████████████████████████████████████████████████████

21        ████████████████████████████████████████████████████████████

22        ██████████████████████████████.

23   Had PTI genuinely believed it had a royalty option, it would have undoubtedly at least mentioned

24   it in earlier complaints, pleadings and discovery, rather than asserting the opposite.  *See* Ex. DX

25   for further evidence of PTI's conduct inconsistent with its new interpretation.

26              **4.    The Federal Circuit twice rejected the argument that a product was**

27                      **unlicensed until a royalty was paid**

28        Another basis for rejecting PTI's new interpretation as a matter of law is the Federal

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 13 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

1   Circuit's opinions in the 630 Investigation (*Tessera,* 646 F.3d 1357) and in *PTI 1* (*Powertech*

2   *Technology, Inc. v. Tessera, Inc.*, 660 F.3d 1301 (Fed. Cir. 2011)).  In both cases, the Federal

3   Circuit rejected the argument that a product is unlicensed until a royalty is paid.

4        In *Tessera,* the Federal Circuit held:  "Each of the TCC License agreements contains an

5   ***unconditional grant of a license*** 'to sell . . . and/or offer for sale' the accused products."  646 F.3d

6   at 1370.  It also held:  "These agreements call for ***running royalty obligations which accrue on***

7   ***products sold***," and "These agreements expressly ***authorize licensees to sell the licensed products***

8   and to pay up at the end of the reporting period.  Thus, in these agreements, Tessera ***authorizes its***

9   ***licensees to sell the licensed products*** on credit and pay later."  *Id.*  The Federal Circuit thus

10  interpreted the Tessera licenses as granting licensees the right to sell products that were licensed at

11  the time they were sold to a customer, even if the royalties were not yet due to Tessera.  That

12  holding was necessary to its decision that the patent exhaustion doctrine applied to sales by

13  Tessera's licensees.  For if a product was outside the scope of the license, then the sale would not

14  be authorized, and there would be no basis for patent exhaustion.

15       Likewise, the Federal Circuit's holding that royalties "accrue on products sold" was

16  necessary to its decision that patent exhaustion applied.  Patent exhaustion depends on "whether or

17  not there has been such a disposition of the article that it may fairly be said that the patentee has

18  received his reward for the use of the article."  *U.S. v. Masonite*, 316 U.S. 265, 278 (1942);

19  *Lifescan, Inc. v. Shasta Tech., LLC,* 933 F.Supp.2d 1243, 1249 (N.D. Cal. 2013).  Under PTI's

20  position that it can decide at any time whether to pay royalties, PTI and its customers would gain

21  the benefit of patent exhaustion without Tessera receiving any royalty or "reward" in return.  This

22  would frustrate the purpose of the patent exhaustion doctrine.

23       In *PTI 1,* the Federal Circuit again rejected the theory that "products were only licensed

24  and not-infringed if royalty payments were current."  660 F.3d at 1307.  It expressly "rejected

25  Tessera's theory that previously-licensed products would become unlicensed when a licensee's

26  royalty payments lapsed."  *Id.*  Then, the Federal Circuit instructed that its conclusions from its

27  earlier decision in *Tessera* "control equally" in *PTI 1*.  *Id.* at 1308.

28       PTI incorrectly contends that Tessera is "bound" by the arguments it made, and which the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                          - 14 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

1   Federal Circuit rejected, in the 630 Investigation.  PTI Mot. at 17:11-16.  Judicial estoppel applies

2   only when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining

3   that position," and when the party's later position is "clearly inconsistent" with its earlier position.

4   *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Abercrombie & Fitch Co. v. Moose Creek,*

5   *Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).[5]  Tessera did not succeed in the 630 Investigation.

6   *Tessera*, 646 F.3d at 1163.  Also, Tessera's position here that PTI must pay royalties on TCC

7   Licensed Product is consistent with its position in the 630 Investigation (that PTI was required to

8   pay royalties on TCC Licensed Products, but that if it failed to pay, the products were unlicensed).

9   Similarly, PTI argues that somehow Tessera is bound in this case by this Court's decision

10  in *Tessera, Inc. v. Advanced Micro Devices, Inc.,* 2007 WL 3232441, at *5 (N.D. Cal Nov. 1,

11  2007).  PTI Mot. at 21:1-3.  But *AMD* involved a different, more limited license and the issue

12  there was whether different products fit a narrower technical definition of licensed products.  *See*

13  D.I. No. 1173 at 2-3 in *Tessera v. AMD*.  The Agreement here has the broader TCC Licensed

14  Products definition, and PTI has not disputed that many of its products for which it has not paid

15  royalties do fit the technical definition of TCC Licensed Products.

16  Having twice benefited from Federal Circuit decisions rejecting the argument that no

17  license exists until a royalty is paid, PTI should not now be permitted to switch sides and argue

18  that the Federal Circuit is in error.

19  **C.      PTI Breached By Not Paying Royalties On TCC Licensed Products**

20  A few undisputed facts establish that PTI did not pay royalties on all products that even it

21  admits fit the definition of TCC Licensed Products. ████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

27  

---

28      [5] PTI's cited case, *Bailey v. Outdoor Media Group*, 155 Cal.App.4th 778 (2007), is not
about judicial estoppel or a statement made in a litigation.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                          - 15 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

1 [REDACTED]

2 [REDACTED]

3 [REDACTED] Tessera's

4 technical expert has determined that numerous other products, for which PTI has not paid

5 royalties, meet the TCC Licensed Product criteria, and PTI's technical expert has not disagreed.

6    The Court should grant summary judgment that PTI breached the Agreement each time it

7 did not pay timely royalties on products that meet the TCC Licensed Product definition.[7]  Also,

8 PTI contends that if its contract interpretation is correct, it is entitled to summary judgment on

9 Tessera's first through seventh counterclaims.  PTI Mot. at 15:19-21 and n. 6.  Because PTI's

10 contract interpretation is wrong, PTI's motion must be denied.

11 **V.    The Court Should Grant Summary Judgment That PTI Breached The Agreement By**
**Purporting To Terminate And That PTI Has No Current Right To Terminate**
12

13    Tessera's first counterclaim also alleges that PTI breached the Agreement by purporting to

14 terminate the Agreement without any cause and without first satisfying the contractual notice and

15 cure conditions to termination.  PTI contends that it has the right to terminate the Agreement

16 because Tessera breached the Agreement's Governing Law provision.  According to PTI, Tessera's

17 breach occurred when it made certain arguments in the 630 Investigation that supposedly

18 threatened PTI-packaged products with a general exclusion order ("GEO").  PTI argues that the

19 Governing Law Provision required Tessera first to give PTI an opportunity to cure and sixty-days'

20 notice of termination, and then to terminate the Agreement before proceeding in the ITC.

21    The Court should enter summary judgment in Tessera's favor on this issue for two

22 independent reasons.  First, undisputed facts show that Tessera did not breach the Agreement.

23

24    [6] *See* rows 11745-47, 11799-802, 23256-74, 23296-301, 23307-14, 23323-57, 23461-76,
23561-62, 23564-69, 24097-119, and 24176-82.

25    [7] PTI argues that the Agreement's Equitable Relief provision precludes Tessera from suing
for breach of contract.  PTI Mot. at 23:14-19.  But, that provision refers to the "procedures" set out
26 in the Agreement, including in Paragraph XIV.A, which allows Tessera to sue PTI for any
disputes arising from the Agreement.  Ex. A at ¶¶ XIV.A and C.  PTI also claims that Tessera's
27 licensing expert said that Tessera cannot sue for breach of contract if PTI fails to pay royalties.
PTI Motion at 23:7-13.  In fact, he testified that the Agreement would support a breach of contract
28 claim.  Guy Decl., Ex. 65 at 162:19-24.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                  - 16 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No. 4:11-CV-06121-CW

Next, PTI breached the Agreement's notice and cure conditions by waiting for three years after it learned of Tessera's supposed breach to notify Tessera that its actions constituted a breach.[8]

### A. PTI's Termination Was Invalid Because Tessera Had No Dispute With PTI And Therefore Did Not Breach The Governing Law Provision

Summary judgment should be granted for Tessera because its actions in the 630 Investigation did not implicate the Governing Law provision. The Governing Law provision dictates the forum in which the parties must resolve "any disputes, controversies, claims or difference which may arise from, under, out of or in connection with this Agreement," if "such disputes, controversies, claims or differences cannot be settled between the parties."[9] Ex. A at ¶ XIV.A. The facts show that Tessera had no dispute with PTI, which was not a party in the ITC action, and that Tessera was not seeking a remedy that would have excluded PTI-packaged products from importation. Therefore Tessera did not breach the Governing Law provision by pursing the action in the ITC.

#### 1. Tessera had no dispute with PTI when it brought the ITC action

In each version of its complaint, including the Fourth Amended Complaint, PTI alleged that Tessera breached the Governing Law provision when it initiated the 630 Investigation. *See, e.g.,* D.I. No. 176 at ¶ 3-8. However, Tessera's initiation of the 630 Investigation did not implicate the Governing Law provision because Tessera had no dispute with PTI or PTI products when it brought the ITC action and therefore nothing to give PTI notice about or to try to resolve with PTI.

When Tessera brought the 630 Investigation in December 2007, it thought that PTI was a licensee in good standing and that the respondents in the 630 Investigation, including Elpida, were using unlicensed subcontractors. PTI's insistence that Tessera sue PTI's customers in the ITC, and

---

[8] If the Court rules in Tessera's favor on this issue, it should also grant summary judgment on Tessera's Ninth Counterclaim that PTI has no current right to terminate and that the Agreement remains in effect, and deny PTI's First Claim seeking a determination that PTI may terminate.

[9] Forum selection clauses referencing disputes between the parties are inapplicable to disputes involving non-parties. *Motorola Mobility, Inc. v. Microsoft Corp.*, 2011 WL 5834923, *6 (N.D. Cal. Nov. 21, 2011) ("forum selection clause, which expressly applies to the parties to the agreement," could not be understood to "extend to third parties"); *Sessions Payroll Mgmt., Inc. v. Noble Constr. Co, Inc.*, 84 Cal.App.4th 671, 681 (2000) (if parties had "wanted to include someone else [in forum selection clause], their contract would have referred to 'any' party").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 17 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PTI'S AND MITS MOTION FOR SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1   its suggestions that Elpida was using unlicensed subcontractors reinforced Tessera's good faith

2   belief.  Tessera's own investigation, which revealed that it had not received royalties on about 40%

3   of Elpida's products, corroborated what PTI was telling Tessera.  *See* Part II.A.  In addition, Tessera

4   reasonably believed that PTI was fully complying with its royalty obligations.  PTI regularly told

5   Tessera that it was one of the only honest packagers and that it respected Tessera's intellectual

6   property.  Exs. M, N.  PTI had not told Tessera that it was withholding royalties for Elpida

7   products, and PTI royalty reports did not disclose withheld royalties.  Ex. F at 255:18-21; Ex. BH.

8          The fact that Tessera did not have a dispute with PTI in December 2007 is confirmed by

9   PTI's response after learning of the 630 Investigation.  On February 11, 2008, just two months

10  after Tessera filed the 630 Investigation, PTI ***thanked*** Tessera for bringing the action.  PTI said

11  that it █████████████████████████████████████████████████████████████

12  ████████  and said that █████████████████████████████████████████████

13  █████████████████████  Ex. N.  The only hint of any complaint by PTI was an off-hand,

14  parenthetical note – ████████████████████████████████████"[10]  But

15  PTI did not ask Tessera to drop the action against Elpida and Kingston or say that it constituted a

16  breach of the Agreement.  If PTI had believed that the Governing Law provision prevented

17  Tessera from suing PTI's customers before first terminating the Agreement, PTI would have said

18  so rather than thanking Tessera.

19                  **2.      Tessera had no dispute with PTI during the 630 Investigation**

20         PTI now recognizes that it cannot credibly claim that Tessera's initiation of the ITC action

21  was a breach.  So PTI has shifted its strategy to argue that ████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████  PTI Mot. at 10:11-

24  15, 10:25-27, 11:2-4.  But Tessera's arguments and use of evidence during the 630 Investigation

25

26         [10] The reason for PTI's complaint was apparent only later when discovery in this case
    revealed that ████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                              - 18 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

1  did not implicate the Governing Law provision for at least two reasons.

2       First, the last sentence of the Governing Law provision refers to notice and dispute

3  resolution procedures before "either party may bring an action" in the ITC.  Ex. A, ¶ XIV.A.  The

4  provision thus applies to the ***bringing*** of claims in the ITC, not to miscellaneous arguments made

5  or evidence used in the midst of litigation.  The Agreement does not state that Tessera cannot

6  mention PTI, use PTI's royalty reports and emails as evidence or conduct analyses of PTI products

7  in a litigation to which PTI is not a party.

8       Second, Tessera had no intention of asking the ITC to exclude PTI-packaged products

9  from importation because Tessera expressly carved out properly licensed products from the

10  remedy it sought.  Tessera expressly stated this in its complaint, in its proposed GEO, and in the

11  proposed certification program designed to permit importation of licensed products.  Ex. Q at ¶ 9,

12  Ex. BI at ¶ 1; Ex. BJ at 105.  Because Tessera believed that PTI's products were licensed and that

13  PTI had paid the royalties due, Tessera had no expectation that a GEO would exclude PTI-

14  packaged products from the United States.  Ex. BK at 208:2-9, 214:7-17; Ex. P at ¶ 7.  In fact,

15  ████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████  Ex. BL at Q.58.  Even after PTI made the 2008 catch-up royalty payments, Tessera

18  believed PTI's representations that it had paid the royalties owed, and Tessera stated that the

19  respondents could use PTI as a source of licensed products.  Ex. BM at 1234:3-23.  Tessera would

20  not have recommended PTI if it thought that PTI was not paying the royalties due.[11]

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  _____

26  [11] PTI argues that in *PTI 1*, the Federal Circuit "found . . . that Tessera targeted PTI-
packaged products in the 630 Investigation."  PTI Mot. at 11:14-15.  The Federal Circuit's

27  comment has no preclusive effect here because there was no such finding of fact by the ITC in that
case, and the Federal Circuit may not and does not find facts.  *Middleton v. Dep't of Defense*, 185

28  F.3d 1374, 1383 (Fed. Cir. 1999).  Moreover, this issue was not "actually litigated," let alone the
subject of a full and fair opportunity to litigate.  *Bobby v. Bies*, 556 U.S. 825, 834 (2009).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                   - 19 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1  ██████████████████████████████████████████████████████████████

2  ████████████████████████████████████.[12]  Ex. BQ at 28:14-29:5; Ex. BR at 2.

3       PTI's citations to the *Texas Instruments* and *AMD* cases are inapposite.  PTI Mot. at 12:5-

4  27.  In the 630 Investigation, Tessera explicitly carved licensed products out of the exclusion

5  orders sought, and based on PTI's representations that it was fully paid up and an honest licensee,

6  believed that the PTI-packaged products would not be excluded.

7       For each of these reasons, the Court should enter summary judgment that PTI had no right

8  to terminate and instead breached the Agreement when it purported to terminate.

9       **B.    PTI's Termination Was Ineffective And A Breach Of The Agreement Because**

10       **PTI Did Not Satisfy The Conditions For Termination**

11       An independent ground for granting summary judgment for Tessera is that PTI failed to

12  satisfy the conditions for terminating the Agreement.  The Agreement required PTI to give Tessera

13  notice of its alleged breach and an opportunity to cure before PTI could terminate.  Ex. A at

14  ¶ VIII.B.  Undisputed facts reveal that PTI knew about the facts constituting Tessera's supposed

15  breach more than three years before PTI finally gave notice in October 2011.  Such dilatory notice

16  fails to satisfy the notice and cure requirement, making PTI's termination legally ineffective.

17       Before a party can terminate a contract, it must satisfy the conditions for termination.  *Mad*

18  *River Lumber Sales, Inc. v. Willburn*, 205 Cal.App.2d 321, 324 (1962); *Kuffel v. Seaside Oil Co.*,

19  11 Cal.App.3d 354, 368 (1970) ("It is axiomatic" that termination clause can only be exercised "in

20  the manner prescribed by the contract.").  In this case, that included giving a legally sufficient

21  notice of the breach and an opportunity to cure, so as to allow the other party the opportunity to

22  remedy or at least mitigate the effects of the asserted breach.  Ex. A at ¶ VIII.B.

23       When notice is unduly delayed, such that it comes too late to provide an opportunity for

24

25  _____

   [12] PTI's claim that Tessera's 630 Investigation counsel testified that Tessera experts

26  "accused" PTI products "for the purpose of excluding those products" misstates his testimony.

   PTI Mot. 11:26-12:2.  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                    - 20 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

cure, such notice is deemed to be "without legal or practical effect." *Maykuth v. Adolph Coors Co.*, 690 F.2d 689, 694 (9th Cir. 1982).  A party that fails to give an opportunity to cure is "precluded from seeking a judicial determination that the contract had been terminated by any breach." *Mad River*, 205 Cal.App.2d at 324.  To allow a judgment of termination in that situation "would permit [the terminating party] to profit by her own wrong." *Id.*  Also, failure to give notice and an opportunity to cure precludes a claim for damages from the alleged breach. *Needham v. Candie's, Inc.*, 2002 WL 1896892, at *3-4 (S.D.N.Y. Aug. 16, 2002); *Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, 544 F. Supp. 2d 609, 616 (E.D. Mich. 2008) ("where a contract expressly includes a notice and cure provision, a party failing to provide such is precluded from then subsequently suing for the other party for breaching the agreement").

PTI waited for more than ***three years*** after learning of the facts upon which PTI bases its claim of breach to notify Tessera of the purported breach.  This inexcusable delay deprived Tessera of any meaningful opportunity to cure or mitigate, and therefore PTI's purported notice was legally invalid in invoking the conditions necessary for a proper termination.  As a consequence, PTI's purported termination should be rejected as invalid and without legal effect.

### 1. PTI's notice of termination was untimely and did not give a reasonable opportunity to cure

In the October 6, 2011 notice letter, PTI asserted that Tessera had breached on December 7, 2007, when Tessera filed the 630 Investigation. Guy Decl., Ex. 80. But as discussed in Part II.B., ████████, PTI knew that PTI-packaged products were involved.  Yet PTI did not notify Tessera that it had breached by filing the complaint.   Instead, ████████. Ex. N.

Faced with these undisputed facts, PTI shifted to its new argument that the breach actually occurred in the middle of the 630 Investigation when Tessera "sought from the ITC a GEO to exclude PTI-packaged products from importation and alleged that PTI-packaged products for which PTI paid royalties infringed its patent." PTI Mot. at 9:17-21.  PTI asserts it did not know about the GEO and the infringement allegations because "Tessera shielded all these arguments from PTI by designating its evidence and briefs as 'CONFIDENTIAL' under the ITC's Protective Order." PTI Mot. at 11:9-10.  PTI maintains that it did not learn of the supposed breach until the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 21 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1   Federal Circuit's September 30, 2011 decision in *PTI 1*.  Ex. BT at 23:22-26; Ex. BU at 94.  PTI

2   took the same position in arguing against Tessera's motion to dismiss, and the Court used PTI's

3   assertion as a reason to deny the motion.  Ex. W at 29:3-10; D.I. No. 93 at 20:10-18.

4        But the undisputed evidence proves that long before September 30, 2011, PTI knew the

5   facts upon which it now bases its claim of breach.  It knew, both because the facts were public and

6   because it was in constant communication with Elpida about the 630 Investigation.  Indeed, on

7   April 22, 2010 – more than 17 months before PTI claims it first became aware – PTI's chairman,

8   D.K. Tsai, submitted a declaration in *PTI 1* stating that █████████████████████████████

9   █████████████████████████████████████   Ex. BV.  He stated:

10   • █████████████████████████████████████████████

11   ███████████████████████████████████████████████

12   ███████████████████████████████████   *Id.* at ¶ 3.

13   • █████████████████████████████████████████████

14   ███████████████████████████████████████

15   ███████████████████████████████████   *Id.*

16   • ████████████████████████████████████████

17   ██████████████████   *Id.* at ¶ 6.

18   • █████████████████████████████████████████████

19   ███████████████████████████████████████

20   ███████████████████████████████████████

21   ██████████████   *Id.*

22        Tessera does not agree with Mr. Tsai's characterization of Tessera's positions and

23   arguments in the ITC.  But the fact that in April 2010, Mr. Tsai knew about Tessera's positions and

24   arguments in the ITC – which PTI now asserts as the basis of Tessera's alleged breach – proves

25   beyond question that PTI was aware of the circumstances upon which PTI bases its new breach

26   argument long before the October 2011 notice.

27        Further, because Mr. Tsai was not permitted to see information designated as confidential

28   under the ITC protective order, he must have obtained the information from the public filings in

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 22 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1   the 630 Investigation or from communications with Elpida about the 630 Investigation.[13]  That

2   information was available to PTI in 2008 and 2009.  *See* Exhibit BX (listing examples of public

3   documents filed in the 630 Investigation in 2008-09 that discussed Tessera's position and the

4   remedy Tessera was seeking, including public documents cited by PTI as instances of Tessera's

5   alleged breach).  The public documents and Mr. Tsai's declaration prove that the ITC's protective

6   order did not prevent PTI from learning the facts constituting Tessera's alleged breach.

7        In fact, ███████████████████████████████████

8   ████████████████████████████████████████████████

9   ██████████████████████████████████████████████

10  ██████████████████████████████████████████

11        For instance, ████████████████████████████████

12  ███████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  █████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ██████████████████████

21        The fact that PTI did not immediately give Tessera notice of the alleged breach in 2008 is

22  evidence that PTI did not really believe Tessera had breached.  Further, by waiting more than three

23  years to give notice – until October 2011, when the 630 Investigation had been fully litigated

24  through the Federal Circuit – PTI prevented Tessera from taking actions that could have cured the

25  alleged breach, such as withdrawing its claims against Elpida, excluding PTI products from any

26  technical analysis, and making absolutely clear in its arguments (even more so than was done) that

27

28      [13] PTI's April 2010 opposition to Tessera's motion to dismiss in *PTI 1* also stated these facts and cited public 630 Investigation documents.  D.I. No. 33 at 2:15-3:19, 5:16-6:23, 10:7-14.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                                                                       - 23 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MIT'S MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW

1    Tessera was not seeking to exclude PTI products from importation into the U.S.

2           PTI contends that Tessera cannot claim that PTI delayed in giving notice because the

3    Agreement contains a No Waiver provision.  PTI Mot. at 13:14-17.  That provision does not bar

4    Tessera's argument because Tessera is neither basing its argument on the affirmative defense of

5    waiver nor contending here that PTI waived any right.  Rather, it is PTI that has the affirmative

6    burden of proving that it satisfied the conditions to termination, and PTI has not met that burden.

7    Further, if the No Waiver provision operated to allow PTI to wait years until a cure was

8    impossible before giving notice, the notice and cure provision would be rendered meaningless.

9           PTI's intentional decision not to give timely notice deprived Tessera of an opportunity to

10   cure or at least mitigate the alleged damages.  Thus, the October 6, 2011 letter was "without legal

11   or practical effect" (*Maykuth*, 690 F.2d at 694), and cannot serve as the basis for PTI's requests for

12   termination and damages.  The Court should hold that, by failing to satisfy the Agreement's

13   conditions to termination, PTI's purported termination is invalid as a matter of law.

14                    **2.      PTI's notice demanded an unreasonable cure**

15          The October 6, 2011 letter was also ineffective and legally invalid because it did not

16   demand a "cure" of the alleged breach – instead, ██████████████████████████████

17   ████████████████.  A demand for monetary compensation, particularly an excessive

18   demand, does not satisfy a contractual notice and cure obligation.  *Chrysler*, 544 F. Supp. 2d at

19   616 ("Plaintiff's letter demanding 1.4 million dollars compensation" did not "constitute providing

20   Defendant an opportunity to inspect, to repair, or to otherwise cure problems with the project").

21          The natural cure here would have been to ask Tessera to withdraw its claims against Elpida

22   or to stipulate that Tessera would not seek to exclude PTI-packaged products.  Indeed, PTI's

23   president testified that if Tessera had dismissed its claims after PTI sent the October 6, 2011 letter,

24   ████████████████████████████████████████████████████████████

25   ████████████████████  Ex. BY at 458:13-459:18.  But instead of asking Tessera to cure, and

26   instead of doing so early enough so that it was a meaningful request, PTI simply demanded ██

27   ███████████████████████████████████████████████  Such a demand

28   for money damages does not constitute compliance with a notice and cure provision.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                           - 24 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

### 3.   Only a "non-breaching party" may terminate the Agreement

Finally, the "Termination for Breach" provision in the Agreement states that "the non-breaching party may terminate." Ex. A at ¶ VIII.B. PTI was not a non-breaching party. As discussed in in Part IV.C above, because PTI had failed to pay royalties on products that even PTI acknowledges are TCC Licensed Products it had no contractual right to terminate the Agreement.

## VI.   Tessera Is Entitled To Summary Judgment On PTI's Contract Claims Because The Alleged Breach Did Not Proximately Cause Any Legally Cognizable Damages To PTI

In addition to seeking termination, PTI seeks damages in its second and third claims for breach of contract and breach of the implied covenant of good faith and fair dealing. D.I. No. 176 at ¶¶ 99-101, 106; PTI Mot. at 9:17-21. These two contract claims fail for the same reasons as its first claim for termination: Tessera's actions in the ITC did not constitute a breach, and PTI did not give timely notice and a reasonable opportunity to cure nor use reasonable efforts to work with Tessera to mitigate the effects of the alleged breach.[14] Ex. A at ¶ XIV.A.

There is another reason why summary judgment should be granted to Tessera on PTI's breach of contract and implied covenant claims – the alleged breach did not proximately cause PTI to suffer any legally cognizable damages under California contract law. A breach of contract claim requires more than proof that a breach occurred; it requires proof that the damages suffered by the non-breaching party were proximately caused by the breach. *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008). If the non-breaching party was not damaged, it cannot succeed on a breach of contract claim, even if there in fact was a breach. *Id.*

PTI's damages claim is based on the theory that Tessera's actions in the ITC gave PTI the right to terminate the Agreement, that PTI did not learn about Tessera's alleged breach until September 2011, and that if it had known earlier, it ██████████████████████████ ██████████████████████████████████████ Ex. BT at 24:7-10; Ex. CA at 24:22-25; Ex. BU at 94-95. PTI therefore seeks as damages the amount of the royalties it paid to Tessera. Ex. BZ at 32:13-16; Ex. BU at 94. Specifically, PTI's damages expert contends that if

---

[14] PTI admits that the Agreement ████████████████ ██████████████████████████ Ex. BZ at 31:1-3.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                             - 25 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 Ex. BU at 95.  He therefore calculates the damages to PTI for Tessera's alleged breach as equal to

4 ████████████████████████████████████████████████ [15] *Id.* at 97.

5       But this damages claim is legally baseless because royalties that PTI was ***already obligated***

6 to pay under the Agreement are not damages recognized under contract law:

7       First, Tessera's alleged breach did not proximately cause PTI to pay the royalties because

8 PTI had a pre-existing contractual obligation to pay royalties to Tessera.  Making payments in

9 fulfillment of a preexisting contractual obligation does not constitute contract damages.  *Sutcliffe*

10 *v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 553 (N.D. Cal. 2012); *Odimbur v. Wells Fargo Bank*,

11 2012 WL 680057, at *4 (C.D. Cal. Mar. 1, 2012); *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL

12 30759, at *16 (N.D. Cal. Jan. 3, 2011).  This preexisting obligation to pay – not Tessera's actions

13 in the 630 Investigation – was the proximate cause of PTI's royalty payments to Tessera.

14       Second, even assuming it could prove liability, PTI would be entitled to no more in

15 damages than the amount it would have received had there been full performance of the

16 Agreement on both sides.  Cal. Civ. Code § 3358.  Contract damages "should, insofar as possible,

17 place the injured party in the same position it would have held had the contract properly been

18 performed."  *Auerbach v. Great Western Bank,*, 74 Cal.App.4th 1172, 1191 (1999).

19       If both Tessera and PTI had fully performed the Agreement, PTI would, by definition,

20 have had to pay the ████████ in royalties.  If Tessera had never brought the 630 Investigation,

21 then PTI would have had no grounds for termination, and PTI would have been required to pay the

22 royalties.  Alternatively, if Tessera had immediately told PTI about its planned actions in the 630

23 Investigation, and if PTI had then advised Tessera of its view that some of these actions would

24 breach the Agreement, Tessera certainly could have dropped the ITC action or at the very least

25

26      [15] At one time, PTI claimed that Tessera's breach also harmed PTI's relationship with its

27 customers, but PTI has never quantified the alleged damaged caused by this supposed harm, either in its interrogatory responses or in its damages expert's report.  Ex. CB at 15:15-18; Ex. BU at 94

28 ██████████████████████████████████████████  Therefore, PTI has dropped any claim for damages based on alleged harm to PTI's relationship with its customers.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                    - 26 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1  dropped its claims against Elpida.  Then, even under PTI's theory, Tessera would have been in full

2  compliance with the Agreement, and PTI would have had to pay the royalties.  Under any analysis

3  of both parties' full performance, PTI would have had to pay the royalties.  In contrast, PTI

4  purports to measure its damages, not by full performance, but by the amount it supposedly would

5  have gained by termination, *i.e.*, no performance.  Allowing PTI to recover the royalties it was

6  obligated to pay would put PTI in a better position than if both parties had fully performed.

7  　　　　Third, even if PTI's damages theory were legally cognizable (which it is not), PTI's own

8  evidence establishes that PTI could ***not*** have terminated the Agreement in September 2010 ███

9  ████████████████████████████████████████████.  As long as the ITC action was

10  pending, PTI knew that it had to remain a licensee in good standing so that Elpida could maintain

11  its license defense. ███████████████████████████████████████████

12  █████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ███████████████████████████████████████████████

15  ██████   Ex. AR.  Because the undisputed facts establish that ██████████████████

16  ██████  PTI cannot prove that it would have terminated the Agreement in September 2010.  Its

17  claim for recovery of all royalties it paid after that date thus fails.

18  　　　　Fourth, PTI never paid royalties to Tessera out of its own pocket. ██████████████

19  █████████████████████████████████████  Ex. CC at 196:20-24;

20  Ex. CD at 128:7-20; Ex. CE at 444:9-11.  Indeed, ███████████████████████

21  █████████████████████████████████████████████████████████

22  ████████████████████  Ex. CF at 600:18-25; Ex. D at 553:14-554:4.  ██████

23  ██████████████████████████████  PTI cannot claim return of royalties that

24  were never PTI's property to begin with.  If PTI recovered the ██████████ claimed by its damages

25  expert, it would have ████████  more than it would have had if there had been no breach of the

26  Agreement – a result that would be contrary to California law.  Cal. Civ. Code § 3358.

27  　　　　For each of these reasons, both as a matter of law and undisputed fact, PTI cannot prove

28  that it was damaged as a result of Tessera's action in the 630 Investigation.  Therefore, the Court

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 27 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No  4:11-CV-06121-CW

1    should grant summary judgment for Tessera on PTI's second and third claims.

2    **VII.    Tessera Should Be Granted Summary Judgment On PTI's Fourth Claim For Fraud**

3         PTI bases its fraud claim on statements by Tessera that PTI was a licensee in good

4    standing, that the 630 Investigation involved only unlicensed products, and that Tessera was not

5    alleging in the 630 Investigation that PTI-packaged products infringed.  D.I. No. 176 at ¶¶ 109,

6    110; *see also* Ex. CB at 6:26-7:7.  PTI alleges that these statements were false because Tessera had

7    supposedly "attacked PTI-packaged products in the 630 Investigation." *Id.*

8         The Court should grant summary judgment to Tessera on PTI's fraud claim because

9    Tessera's statements about the 630 Investigation were true.  *See* Part V.A.  Summary judgment for

10   Tessera is also appropriate because the claim is time-barred given that PTI had actual or

11   constructive notice of the key facts that form the basis of the alleged fraud more than three years

12   before making the claim.  Also, PTI cannot prove that it relied to its detriment on the purportedly

13   false statements.

14        **A.    PTI's Fraud Claim Is Time Barred**

15        Fraud carries a three-year statute of limitations, which runs from the date that a party had

16   actual or constructive notice of the facts constituting the alleged fraud.  Cal. Civ. Proc. Code

17   § 338(d); *Robuck v. Dean Witter & Co.*, 649 F.2d 641, 644 (9th Cir. 1980).  Constructive notice

18   occurs when a party knows facts sufficient to make a reasonably prudent person suspicious of

19   fraud.  *Id.*  PTI first filed its fraud claim in its June 1, 2012 First Amended Complaint, setting June

20   1, 2009 as the statute of limitations cut-off date.  D.I. No. 101 at ¶¶ 94-100.

21        The undisputed evidence establishes that PTI knew or had notice of the facts underlying its

22   fraud claim before June 1, 2009.  █████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████

24   ████████    See Part II. B.  In June 2008 PTI made the first of its catch-up payments ███████

25   █████████████████████████████████████████  *Id.*  And in June-July 2008,

26   various respondents in the 630 Investigation filed public documents discussing Tessera's position

27   that a product was not licensed until a royalty was paid and arguing that Tessera supposedly was

28   seeking to exclude products for which a royalty had not yet been paid.  *See* Ex. BX and documents

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                          - 28 -                    TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

1   cited therein.  This public information gave PTI notice well before June 1, 2009 of facts sufficient

2   to make it suspicious.  Therefore, PTI's claim is barred.

3   **B.    PTI Cannot Prove That It Relied To Its Detriment On The Statements**

4        PTI's fraud claim should also be summarily rejected because PTI has not and cannot prove

5   that it detrimentally relied on the allegedly false statement.  To recover for fraud, PTI must "prove

6   the detriment proximately caused by" by Tessera's statements.  *Service By Medallion, Inc. v.*

7   *Clorox Co.*, 44 Cal.App.4th 1807, 1818 (1996).  "Deception without resulting loss is not

8   actionable fraud."  *Id.*

9        PTI has produced no evidence in this case that it relied on Tessera's statements and was

10  damaged by that reliance.  Instead, PTI advances a theory that it is entitled to recover ████████

11  because Tessera's alleged fraud supposedly unjustly enriched Tessera.  Ex. BZ at 32:18-21; Ex.

12  BU at 98-99.  PTI's damages expert asserts that ████████████████████████████████████

13  █████████████████████████████████████████████████.  Ex. BU at 98-99.

14       The Court must reject this unjust enrichment theory as a remedy for fraud for multiple

15  reasons.  First, California law does not allow an unjust enrichment claim when the parties have an

16  express enforceable contract governing their relationship.  *Durell v. Sharp Healthcare,* 183 Cal.

17  App. 4th 1350, 1370 (2010).  *See also California Medical Ass'n. v. Aetna U.S. Healthcare of Cal.,*

18  *Inc.*, 94 Cal.App.4th 151, 172 (2001) ("When parties have an actual contract covering a subject, a

19  court cannot – not even under the guise of equity jurisprudence – substitute the court's own

20  concepts of fairness regarding that subject in place of the parties' own contract.").  Here, the

21  parties have an enforceable express contract.  PTI is trying to terminate the Agreement, but has

22  never contended that it is unenforceable.

23       Next, when a plaintiff is obligated under a pre-existing contract to make payments, the

24  plaintiff cannot claim that it was damaged by being falsely induced into continuing to make those

25  payments.  *Auerbach* at 1189 ("payments on the note made by the [plaintiffs] cannot be construed

26  as damages" because they were preexisting obligations); *Ortiz v. Am. Servicing Co.*, 2012 WL

27  2160953, *5 (C.D. Cal. June 11, 2012) (fraud claim failed as matter of law because plaintiff could

28  not allege reasonable reliance given that plaintiff had obligation to make loan payments).  Here,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                              - 29 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

1  PTI claims that Tessera's statements induced it to continue to make royalty payments.  But the

2  Agreement had already granted PTI a license in exchange for PTI's agreement to pay the royalties.

3  *Tessera,* 646 F.3d at 1370.  Thus PTI had a preexisting obligation to make those royalty payments.

4      Further, PTI cannot show that it changed its position in reliance on the allegedly false

5  statements.  When there is no evidence that a plaintiff is in a worse position as a result of the

6  defendant's allegedly false statement, the plaintiff has failed to establish a fraud claim.  *Conrad v.*

7  *Bank of America*, 45 Cal.App.4th 133, 160 (1996) (plaintiff "failed to establish a cause of action

8  for fraud" when there was no evidence "that plaintiffs were in any different, or worse, position as a

9  result of" the allegedly false statement).  PTI cannot show that it changed its position and was any

10  worse off by relying on Tessera's supposedly false statements.  If Tessera had never made the

11  allegedly false statements, PTI would be in no different position – PTI would have continued to

12  pay the royalty.  And, even if Tessera had told PTI about everything happening in the 630

13  Investigation, PTI would not have been able to terminate the Agreement because ███████████

14  ██████████████████████████.

15      **C.      The Statement About "Somewhat" Lower Royalty Rates Is Not Actionable**

16      PTI's fraud claim also alleges that Tessera misrepresented that "PTI received an

17  advantageous royalty rate while other DRAM manufacturers received only 'somewhat' lower rate"

18  [sic].  D.I. No. 176at ¶ 109(d).  This statement cannot form the basis of fraud because it is a

19  "generalized, vague and unspecific assertion[]."  *Glen Holly Entm't, Inc. v. Tektronix Inc.,* 343

20  F.3d 1000, 1015 (9th Cir. 2003).  Moreover, PTI has not produced any evidence that it relied on

21  this statement to its detriment.  In fact, PTI's damages expert did not calculate any amount by

22  which PTI was damaged by the statement.  Ex. BU at 97-99.  PTI's interrogatory response on

23  damage is likewise silent.  Ex. BZ at 32:13-25.  Therefore, PTI has dropped any fraud claim based

24  on this statement, and it should be summarily adjudicated in Tessera's favor.

25  **VIII.   The Summary Judgment Ruling In *PTI 1* Resolves PTI'S Fifth And Sixth Claims**

26      PTI's fifth and sixth claims ask for a judicial determination that the Agreement's

27  requirement that PTI pay royalties on TCC Licensed Products until the expiration of the licensed

28  patents is patent misuse, and for a judicial determination that its royalty obligations are limited to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 30 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

TCC Licensed Products that infringe an unexpired licensed patent. The Court should summarily adjudicate these claims because the Court already decided both issues in Tessera's favor in its March 31, 2013 decision granting summary judgment in *PTI 1*. D.I. No. 233.

Specifically, on the issue of patent misuse, the Court held that courts have approved contract provisions, like the provision in the Agreement requiring the payment of royalties until the expiration of the last licensed patent, when the agreement was entered into voluntarily; that "PTI has offered no evidence that it was coerced into entering the license agreement;" and that the evidence showed that PTI and Tessera had entered into the Agreement for the sake of convenience. *Id.* at 25:12-26:19. That finding is equally applicable here to decide PTI's fifth claim. The Court also expressly held that "the express language of the contract unambiguously conditions PTI's payment of royalties on whether its products fall into the definition of 'TCC Licensed Product' as stated in the agreement and not on whether they infringe on the '106 patent or any other." *Id.* at 32:10-14. That holding resolves PTI's sixth claim in this case.

IX.    **PTI's Motion On Tessera's Second And Fourth Counterclaims For Breach Of The Implied Covenant And Fraudulent Transfer Raises Disputed Facts**

PTI moves for summary judgment on Tessera's claims for breach of the implied covenant of good faith and fair dealing and fraudulent transfer, arguing that MTI is not PTI's alter ego and that the Agreement expressly allows MTI to decide not to be bound by the Agreement.

PTI mischaracterizes Tessera's claims. They do not require MTI to be PTI's alter ego or turn on whether MTI could decide not to be bound by the Agreement. Rather, Tessera claims that PTI breached the implied covenant and violated California fraudulent transfer law by ███████ ████████████████████████████████████████████████████████████████. Nothing in the Agreement states that PTI is permitted to deprive Tessera of the benefit of its bargain in such a manner. Moreover, these claims require the resolution of disputed facts. PTI's motion therefore must be denied.

A.    **The Jury Needs To Resolve The Disputed Factual Question Whether PTI Breached By Transferring** ███████████

The parties agree that the purpose of the Agreement is to give PTI a license to certain

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 31 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

Tessera patents and to give Tessera the right to receive royalties.  Ex. CG at 446:5-11; Ex. BZ at 21:18-24.  The implied covenant of good faith and fair dealing imposes the duty "that a party to a contract will not do anything which would deprive the other party of the benefits of the contract." *April Enter., Inc. v. KTTV*, 147 Cal.App.3d 805, 816 (1983).  Thus, PTI had a duty not to do anything to deprive Tessera of the benefit of receiving royalties under the Agreement.

Moreover, when one party claims to have a discretionary right under a contract – like PTI claims to have the discretion to decide whether to have MTI be bound by the Agreement – the covenant "finds particular application." *Carma Developers, Inc. v. Marathon Development Cal., Inc.* 2 Cal.4th 342, 372 (1992).  In such a situation, the discretionary power "must be exercised in good faith." *Id.*  Whether the implied covenant was breached by failure to exercise contractual discretion in good faith is a question of fact that is not appropriate for summary judgment.  *Best Buy Stores, L.P. v. Manteca Lifestyle Center, LLC*, 859 F.Supp.2d 1138, 1154 (E.D. Cal. 2012) (denying summary judgment motion); *Gabana Gulf Dist., Ltd. v. GAP Int'l Sales, Inc.*, 2008 WL 111223, *8 (N.D. Cal. Jan. 9, 2008) (same).

Considerable evidence supports the conclusion that PTI violated its duty of good faith by

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 32 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW



1  ▮▮▮▮▮▮▮▮ Ex. CU; Ex. BY at 405:5-406:14.

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮ At a minimum, this evidence raises disputed facts about

13 whether PTI intentionally tried to deprive Tessera of the Agreement's benefits.

14        PTI's sole defense is that only PTI and its Licensee Affiliates are bound by the Agreement,

15 the Agreement states that a Licensee Affiliate is a "company which agrees to be bound" by the

16 Agreement, and MTI did not agree to be bound and therefore is not a Licensee Affiliate.  PTI then

17 concludes that because the Agreement gave PTI the discretion to decide whether MTI should be

18 bound by the Agreement, PTI was free to use MTI in any way, including to avoid paying royalties.

19        As an initial matter, whether PTI and MTI agreed to have MTI be bound by the Agreement

20 is itself a disputed question of fact, because their conduct suggests that MTI was acting as a

21 Licensee Affiliate. ▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮ Because the Agreement does not give PTI "have made" rights, *i.e.*,

23 PTI cannot subcontract to a non-Affiliate to do work for PTI (Ex. A at ¶ II.A.), MTI by definition

24 acted as a Licensee Affiliate ▮▮▮▮▮▮ .

25        Further, PTI's argument depends on reading the Licensee Affiliate provision as an artifice

26 to allow PTI to avoid its royalty obligation by ▮▮▮▮▮▮▮▮▮▮

27 ▮▮▮▮▮▮▮▮ Nothing in that provision gives PTI such a

28 right, and PTI's interpretation conflicts with other contract provisions.  For example, allowing PTI

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 33 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1  ███████████████████████████████  would give PTI the ability to terminate its

2  royalty obligations without satisfying the Agreement's termination requirements.  Ex. A at ¶ VIII.

3         In addition, PTI's argument misconstrues implied covenant law.  The evidence here

4  supports the conclusion that PTI did not act in good faith in ███████████████

5  ████████████████████████.  *Carma Developers,* 2 Cal.4th at 372 (implied

6  covenant has "special application" to discretionary rights under contract).  Indeed, PTI did not tell

7  Tessera about the plan because it knew that Tessera would challenge ███████████

8  ████.  Ex. BY at 405:5-406:14; Ex. CU.  If PTI had really believed that the parties intended

9  for the License Affiliate provision to permit ███████████████████, PTI would

10 not have concealed its efforts.  Thus, whether PTI acted in good faith ██████████

11 ██████████████  is a disputed question not appropriate for summary judgment.

12        Finally, PTI argues extensively that Tessera cannot prove that MTI was PTI's alter ego.

13 But that is not an element of an implied covenant claim.  *Rosenfield v. JPMorgan Chase Bank*,

14 732 F.Supp.2d 952, 968 (N.D. Cal. 2010).[16]  In any event, whether MTI is an alter ego is disputed.

15 Using a corporation to avoid existing contractual obligations can justify piercing the corporate

16 veil.  *Kohn v. Kohn*, 95 Cal.App.2d 708, 710 (1950); *McLoughlin v. L. Bloom Sons Co.*, 206

17 Cal.App.2d 848, 850 (1962).  Also, many of the factors indicating that a corporation is an alter ego

18 are present here, ███████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ███████████████████████  *McLoughlin*, 206 Cal.App.2d at 838-40; Ex. K at 16:7-17:5, 20:19-

22 21:20; Exs AK, CJ, CK, CM, CO, CY, CZ at 35, DB, DC, DD at 23:13-18, DE, DG.  Therefore,

23 even if Tessera needed to prove that MTI was PTI's alter ego (which it does not), that question of

24

25        [16] California, not Taiwanese law, governs the alter ego question because the Agreement's
26 choice of law provision (designating California law) governs claims arising from the Agreement,
   and because under California choice of law rules, California law is the default and California has
27 an interest in preventing companies from escaping liability through an unwarranted corporate
   shield.  *Wehlage v. Empire Healthcare Inc.*, 821 F.Supp.2d 1122, 1127, 1130 (N.D. Cal. 2011).
28 Because, according to PTI, Taiwanese law does not consider this California interest and is quite
   limited, the default California law should apply.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                          - 34 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT    Case No 4:11-CV-06121-CW

1    disputed fact could not be resolved on summary judgment.

2        **B.       PTI Violated California Fraudulent Transfer Law By** ███████████

3    ████████████████████████████████████████████████████████

4        Under California's Fraudulent Transfer Act, "a transfer is fraudulent, both as to present and

5    future creditors, if it is made '[w]ith actual intent to hinder, delay, or defraud any creditor of the

     debtor.'"  *Mejia v. Reed*, 31 Cal.4th 657, 664 (2003) (quoting Cal. Civil Code § 3439.04(a)).  PTI

6    violated this law when it ███████████████████████████████████████████

7    ███████████████████████████████.

8        PTI argues that summary judgment should be granted because the parties specifically

9    contemplated that PTI could █████████████████████████████████████████████.

10   As discussed above in Part IX.A, the language of the Agreement and the actions of the parties do

11   not support that argument.

12       PTI also argues that ████████████████████████████████████████████

13   ████████████████████████." PTI Mot. at 29:19-20.  PTI is wrong.  For the purposes of

14   California fraudulent transfer law, an "asset" includes assets covered by federal bankruptcy law

15   and "anything that may be the subject of ownership."  Cal. Civ. Code § 3439.01(h); *In re AFI*

16   *Holding, Inc.*, 525 F.3d 700, 703 (9th Cir. 2008) ("Where state statutes are similar to the

17   Bankruptcy Code, cases analyzing the Bankruptcy Code provisions are persuasive authority. . . .

18   California's fraudulent transfer statutes are similar in form and substance to the Bankruptcy Code's

19   fraudulent transfer provisions.").  Assets include "all obligations," "the good will of a business,"

20   and "a book of business."  Cal. Civ. Code § 655; *see also Hunt v. Phinney*, 177 Cal.App.2d 212,

21   216 (1960) ("It has been repeatedly held that the goodwill of a business is property . . . .");

22   *Bellingham Insurance Agency, Inc.*, 702 F.3d 553, 571 (9th Cir. 2012) ("The transfer of an

23   ongoing business concern can constitute a fraudulent transfer."); *Stoumbos v. Kilimnik*, 988 F.2d

24   949 (9th Cir. 1993) (intangible assets such as client accounts and "book of business" may be

25   fraudulently conveyed).  Courts have specifically held that the transfer of employees, customers,

26   and a reasonable expectancy of "continuity" constituted a fraudulent conveyance.  *Robinson v.*

27   *Watts Detective Agency, Inc.*, 685 F.2d 729, 734 (1st Cir. 1982); *see also In re Watman*, 301 F.3d

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                              - 35 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1   3, 12 (1st Cir. 2002) ("There is substantial support in bankruptcy case law for the proposition that

2   such intangible assets as goodwill and overall going concern are valuable . . . .").

3          Pursuant to this authority, PTI's long-term strategic commitment to and business

4   relationship with Elpida was an asset subject to fraudulent transfer law.  Ex. B at 701:5-14.

5   Therefore, PTI's motion must be denied.

6   **X.     PTI's Motion On Tessera's Sixth And Seventh Counterclaims For Intentional And**
          **Negligent Interference Raises Disputed Facts**
7

8          PTI argues that summary judgment should be granted on Tessera's interference claims

9   because PTI and MTI did nothing wrong in setting up MTI so that PTI ███████████████

10  ████████████████████████████████ PTI Mot. at 30:21-31:9.  As discussed in detail

11  in Part IX, PTI's actions were independently wrongful, and PTI knew they were, which is why PTI

12  was concerned that Tessera would challenge them.

13         PTI also argues that ███████████████████████████████████████████████

14  ███████████████████████████████████████ PTI Mot. at 31:17-19.  PTI cites no

15  legal authority for the assertion that contract negotiations cannot constitute an economic

16  relationship.  The law recognizes that the "possibility of an economic relationship" can suffice to

17  defeat summary judgment on an interference claim.  *Centigram Argentina, S.A. v. Centigram Inc.*,

18  60 F. Supp. 2d 1003, 1005, 1013 (N.D. Cal. 1999).  *See also Silicon Labs Integration, Inc. v.*

19  *Melman*, 2010 WL 890140, at *2 (N.D. Cal. March 8, 2010) ("business discussions" with

20  "potential customers in the industry" was grounds for interference claim); *Impeva Labs, Inc. v.*

21  *Sys. Planning Corp.*, 2012 WL 3647716, *6 (N.D. Cal. Aug. 23, 2012) ("business discussions"

22  and submittal of response to RFP sufficient to satisfy "existing business relationship"

23  requirement).  Therefore, Tessera's ongoing negotiations with Elpida were legally sufficient to

24  constitute an economic relationship that could be subject to interference by PTI and MTI.

25         Finally, using circular logic, PTI contends that Tessera's interference claim fails because

26  Elpida and Tessera ultimately did not agree to a license.  PTI Mot. at 30:28-31:3.  But of course

27  Elpida had no need to obtain a license from Tessera once PTI and MTI had ████████████

28  ████████████████████████████████████████████████████████████████

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 36 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW

1     ██████████████████████████████.  The proper question is whether there is evidence to

2   support the claim that *if PTI and MTI had not interfered*, Elpida would probably have agreed to a

3   license with Tessera. ████████████████████████████████████████████████████████

4   █████████████████████████████████████████  Ex. CD at 128:7-20;

5   Ex. DH at 22:25-23:16, 33:12-34:8, 93:7-15.  The evidence on that question is sufficient for a jury

6   to decide whether, but for PTI's and MTI's interference, Elpida would have taken a license.

7   **XI.     PTI's Motion On Tessera's Fees and Costs Counterclaim Should Be Denied**

8            PTI seeks adjudication of Tessera's eighth counterclaim on the ground that the Agreement's

9   provision for the recovery of litigation fees and costs does not apply to ███████████████

10  █████████████████████████████████████████████████████████████████████████████

11  █████████████████.[17]  PTI Mot. at 33:9-12, 18-20.  The use of "arising out of" in the

12  Agreement "need not be, in the legal sense, a proximate cause of the injury."  *Pacific Indem. Co. v.*

13  *Truck Ins. Exchange*, 270 Cal.App.2d 700, 704 (1969).  The use of "related to" is even broader,

14  encompassing sequential, logical, and causal connections.  *Bay Cities Paving & Grading, Inc. v.*

15  *Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 872-73 (1993).

16           Tessera's fees and costs from the 630 Investigation ████████████████████████

17  ████████████████ because, as detailed in Part II.A, ████████████████████████████

18  █████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  █████████████████████████████████████████████████████████████████

21  █████████████████████████████████████████████████████████████████

22  █████████████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████.  *See, e.g.,*

24  Ex. J.  Having ████████████████████████████████████████████████████████

25

26           _____
              [17] The Agreement covers █████████████████████████
27  ████████████████████████████████████ Ex A at ¶ XIII.A.  Indemnity provisions covering
    ██████████████████████ extend to inter-party claims.  *Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th
28  1010, 1027 (2011).  PTI could have written the provision to be limited "to actions brought by third
    parties, but it did not."  *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1032 (9th Cir. 1992).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                                            - 37 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MTI'S MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1  cannot walk away from its obligation to pay the costs related to that action.

2  PTI also argues that it has no obligation to pay Tessera's fees and costs from *PTI 1* because

3  the Agreement states that ████████████████████████████████████████████████.

4  PTI Mot. at 34:11-13.  This ignores that PTI sought a ruling that the Agreement required royalties

5  only for products that infringed a Tessera Patent, and the Court's entire ruling was about that

6  question.  Neither the parties nor the Court addressed whether the '106 patent was invalid because

7  that question was irrelevant to the question of PTI's royalty obligations.  Therefore, the case up

8  through the summary judgment ruling did not ████████████████████████████████████; it

9  was concerned exclusively with that subject.

10  **XII.   Whether PTI Must Pay Royalties On "Final Test" Products Is A Question Of Disputed Fact That Cannot Be Resolved On Summary Judgment**

11

12  PTI failed to pay royalties for its "final test" products.  For such products, ███████████

13  ██████████████████████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████████████████████

15  ███████   Whether PTI owes royalties for final test products cannot be decided on summary

16  judgment because that question requires resolving several disputed factual matters.

17  The Agreement requires royalties for "TCC Licensed Products sold by Licensee hereunder,

18  *whether sold, transferred or used internally*."  Ex. A at ¶ III.B. ██████████████████████

19  ████████████████████████████.  Ex. DK at 123:18-125:1; Ex. DL at 126:15-21.

20  Sidestepping these facts, PTI argues that the License Grant provision and its reference to

21  "assembly" somehow changes the obligations in the Royalty Provision.  PTI Mot. at 35:20-26.

22  But the Court already ruled in *PTI 1* that royalties must be paid on products meeting the technical

23  definition of "TCC Licensed Products."

24  A factual dispute exists regarding whether "assembly" includes testing.[18]  As used in the

25  Agreement and the industry, the process used "to assemble ICs" is understood to include testing.

26  Ex. DM at 157:21-158:3; Ex. DN at 245:20-25.  Tessera patents explicitly included in the

27

28  ───────────────

[18] The term "assemble" in the Agreement does not simply mean "package," as PTI contends, because the Agreement uses both terms.  *See, e.g.,* Ex. A at ¶¶ II.A & II.B.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715

- 38 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No 4:11-CV-06121-CW

1   Agreement demonstrate that the parties understood this when they signed the contract.  *See, e.g.*,

2   Ex. DO ("Another problem associated with the assembly process is testing."); Ex. DP ("In the next

3   stage of the assembly operation ***after*** testing . . . "); Ex. DQ ("A method of making a

4   microelectronic package comprising the steps of: . . . testing . . . ."); Exs. DR, DS, DQ (multiple

5   claims and embodiments directed to testing, including final test); *DVD Copy Control Ass'n, Inc. v.*

6   *Kaldeiscape, Inc.*, 176 Cal.App.4th 697, 713-14 (2009) (written agreements incorporate

7   documents referenced therein).  Notably, ████████████████████████████████

8   ████████████████████████ .  Ex. DU ("[A]s you know, Tessera's semiconductor packaging

9   and testing technology is directly relevant the types of packages that PTI manufactures.").

10      PTI's arguments about its subjective, unexpressed, and after-the-fact beliefs about testing

11  do not change the Agreement.  *Vaillette v. Fireman's Fund Ins. Co.*, 18 Cal.App.4th 680, 690

12  (1993) ("The true, subjective, but unexpressed intent of a party is immaterial and irrelevant.").

13  Although ███████████████████████████████ , PTI's self-selected business

14  labels do not limit its royalty obligations.  If they did, PTI could avoid royalties simply by creating

15  a "Non-TCC" business unit.  Similarly, ████████████████████████████

16  ███████████████████████████████████████████████████

17  ████████████████████ .  PTI never told Tessera that PTI was performing final testing

18  on TCC Licensed Products without paying Tessera royalties.  Further, Tessera's inability to tell

19  from royalty reports or public information whether or when other licensees pay for final test sales

20  does not inform PTI's royalty obligations. Ex. DV at 79:10-17; Ex. DW at 672:9-25.

21      At most, PTI's arguments illustrate the disputed facts that need to be resolved before

22  Tessera's testing claim can be decided, making summary judgment inappropriate.

23                              **CONCLUSION**

24      Tessera requests that the Court grant summary judgment for Tessera and reject  PTI's

25  motion for summary judgment.

26  Dated:  November 1, 2013                IRELL & MANELLA LLP
                                            By:/s/ Laura A. Seigle

27                                          Laura A. Seigle
                                            Attorneys for Tessera, Inc.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2912715                              - 39 -

TESSERA'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PTI'S AND MITS MOTION FOR
SUMMARY JUDGMENT   Case No  4:11-CV-06121-CW